## JESSIE LEWIS VS. HENRY GIBSON.

FRAUD.  *Sale of personalty.  Homicide.*

1. A person guilty of homicide being liable for the costs of conviction and for damages at the suit of the personal representative of the deceased, (1) a sale of his personalty made immediately after the homicide, to avoid such liability is void for fraud.

### STATUTE OF FRAUDS.  *Creditor. Purchaser.*

2. The title to personal property sold to evade liability, can, under the statute of frauds of 1801 (Code, 1759,) only be attached, (1) Hall v. Nashville & Chattanooga, R. R. Co., *supra* p. 204, by a creditor or subsequent purchaser. A bailee for safe keeping cannot attack the plaintiff's title under this statute by way of a defence to trover.

### QUÆRE.

3. Whether the fact that property was taken by creditors would be a defence to trover.

### BAILEE FOR SAFE KEEPING.  *Conversion.*

4. If a bailee for safe keeping warrant the property to others, he is guilty of a conversion.

CARUTHERS, J., delivered the opinion of the Court:

This is an action of trover for a horse, in which two legal questions arise upon the charge of the Court upon which a reversal is asked by the plaintiff who failed below. First, as to the right of property in the plaintiff the jury were instructed to this effect, that if the horse belonged to one who had committed a felony, and he sold him with the intent and purpose of evading any pecuniary liability that might devolve on him in consequence of his crime, and the *plaintiff concurred in* that object and purpose, he would get no title, but that the transaction would be fraudulent and void.

The horse was the property of one of the Lewises, sons of the plaintiff, who had murdered the sheriff of Campbell county

.(1)  For note see p. 236.

and his deputy, for which they were afterwards tried, con-
victed of murder in the first degree, and executed under the
judgment of this court. The proof of change of title is
made by Allen Lewis another son of the plaintiff. He
says that a day or to after his brothers John and Jessie
were said to have killed Gibson and Queener he met them
in the road, and they told him that under the circumstances
they could not return to get their horses, and wanted to sell to
him; that he bought them, and in three or four days after-
wards sold them to his father, to *pay for them*. This was
early in August, 1858. He did not pay for the horses. He
says he took his father's note for the price, but nothing has
been paid by either. Neither of them ever had posses-
sion. Allen does not state what price he was to give, or
how he bound himself to pay, or for what amount he took
his father's note, or what has become of it, or to whom it
was payable. This kind of proof is certainly insufficient
to establish a change of title from the former owners to
the plaintiff. But if this were otherwise the transaction
would be void for fraud as upon the ground stated by the
court. But as to what persons, will hereafter be noticed.
A person guilty of homicide is not only liable for costs of
prosecution in case of conviction, but is liable for damages
at the suit of the personal representative of the deceased.

If he disposes of his property, even by sale under these
considerations for the purpose of avoiding such liabilities,
and the purchaser buys to aid him in that purpose such a
sale confers no title except as between the parties themselves.
Much less would a transfer without consideration for the
same purpose.

But we presume that this objection to the sale could only

be available to creditors, (1) or to persons entitled to damages, (2) or subsequent purchasers, (3) and not by one who has no claim to the property or demand against the vendor, but one who is charged with the wrongful conversion of it. (4) The statute of frauds of 1801 confines the objection to the creditor and purchaser, and so are all our decisions : so far then as the charge allows the defendant to avail himself of this objection to the title of the plaintiff there is error, and the jury may have been mislead by it. It may be that the verdict would have been the same upon the ground that there had in fact been no sale so as to vest the plaintiff with title as against any one, but that question should have been submitted to the jury.

The horse was placed in the possession of defendant, by those who had taken charge of the prosecution, previous to

(1) Code 1759; taken from Act of 1801, Ch. 25, § 2, first clause, and Act of 1715, ch. 38, ⸹ 8.

Conveyance in fraud of dower void. Rowland v. Rowland, 2 Sneed, 543; Brewer v. Connell, 11 Humph. 500. Or in fraud of alimony, Brooks v. Canghran, 3 Head, 464; Bails v. Bails, 1 Cold. 284.

(2) Patrick v. Ford, 5 Sneed, 532; Farnsworth v. Bell, 5 Sneed, 531.

See also as to fraudulent sales and conveyances. Powell v. Lazell, supra p. 195, and citations.

(3) Code 1759. White v. Edgmam, 1 Tenn. 19; Scruggs v. Davis, 5 Sneed, 261; Bell v. Cummins, 3 Sneed, 275; Jones v. Allen, 1 Head, 626; Jordan v. Greer, 5 Sneed, 165. And see generally, as to what constitutes a conversion. 1 Chit. Pl. 153; 2 Greenl. Ev. ⸹ 642; 2 Selw. N. P. p. 1370.

(4) See Bishop's First Book of the Law, ⸹ 18, where the principle is stated and discussed that a person cannot acquire a standing in Court by complaining of a wrong done by or to another by which he himself is not affected.

And see as to the same doctrine, Atnip v. Gilbert, supra p. 181, and cases cited. See also Hill v. Pine River Bank, 45 N. H. Rep. 300.

any arrest of the Lewises, for safe keeping.  After the arrest it is alleged that he was taken by the creditors of the former owner, and applied to the satisfaction of his debts.  But this is not legally made out in the proof.  If this were shown it might be a question, whether any damages at all could be recovered, they should only be nominal even if the plaintiff established his title by purchase as against defendant and proved a previous conversion.  But the case calls for no opinion on that point now and none is given.

2.  On the other question in the case as to the law in relation to a conversion, we think his Honor went a little beyond the law when he instructed the jury that a depository of a horse for safe keeping might not only use it for himself and family, moderately, but might "*even loan it* out to others without being subject to any liability for a conversion, provided the property was in no way injured, and his purpose was all the time only to take care of the property for the true owner."  Such an assumption of ownership, on the part of a bailee to keep as is implied in loaning out the animal to others to be used would, we think, be a conversion.  The general principal is that any unauthorized assumption of ownership over the property of another is in law a conversion.  It may be that such a moderate use of a horse placed in the custody of another to keep without reward, as is consistent with his safety and well being would not render the bailee liable in trover ; but to give up the possession and use to another, either as a loan or for hire, is unauthorized.  The court held that any use or hiring for profit or advantage would be a conversion, but not so where it was without advantage or gain to the bailee.  (5)

(5)  Angus v. Dickerson, Meigs, 659 ; Horsely v. Branch, 1 Humph. 199 ; Cain v. Kelly, 4 Humph. 472 ; Houston v. Dyche, Meigs, 76.

For errors in the charge then upon both points we feel constrained to grant a new trial, although from what we can see of the case the verdict may have been the same upon a correct charge.

*Judgment reversed.*