## SQUAW CREEK DRAIN. DIST. NO. 1, Respondent, v. GEORGE F. HOPPER.

In the Kansas City Court of Appeals, December 4, 1922.

1. **DRAINS:** Taxation: Pleading: The defense that Cause of Action Relied upon Had no Existence Because Drainage District Had no Power to Levy Tax, Held Available under a General Denial. In an action by a drainage district to enforce a tax assessment, the defense that the cause of action relied upon never had any existence because the district had no power to levy the tax, is available under a general denial.

2. ————: ————: Level Tax Held not Authorized to Pay Preliminary Expenses When Cost of Constructing Drainage Works is to be Ob-

tained by Levying Tax under Assessment Plan Provided by Statute. Under section 5519, Revised Statutes 1909, authorizing a drainage district to assess benefits and damages, and a tax on lands to which benefits were assessed, equal to the cost of drainage works, etc., levy annually a level tax to be apportioned to and levied in proportion to the benefits assessed, and section 5535, Revised Statutes 1919, applying to districts organized prior to April 8, 1905, providing that board of supervisors, instead of having commissioners appointed to assess benefits or damages, may for the purpose of constructing drainage works and maintaining and keeping same in repair, etc., levy annually a level rate not to exceed fifty cents on each acre of land, *held* such level tax is only authorized in lieu of an assessment of benefits, and not as a preliminary tax to pay certain expenses in a district in which the cost of constructing the drainage works is to be obtained by levying a tax under the assessment plan.

3. ——: ——: Statute Authorizing Levy of Tax for Preliminary Costs Held Applicable Only When District is First Organized and Before Main Work is Begun. Section 5538, Revised Statutes 1909, providing for a levy not to exceed twenty-five cents an acre as soon as any drainage district shall have been organized for purpose of paying expenses of organization, etc., applies only to the payment of preliminary costs when a district is first organized and before the main work is begun, and the statute did not authorize such a levy by a district which adopted a drainage plan, but on account of lack of funds never completed it, and thereafter attempted to levy the tax to defray costs of proceedings for the extension of its corporate period, extension of its boundary lines and to pay for works and improvements necessary to be made for protection and reclamation of lands, etc.

4. ——: ——: Statute Authorizing Tax by Drainage District Organized Thereunder not Applicable to Drainage District Organized under Prior Statutory Provisions. Section 11 of the Laws 1913, p. 238, authorizing any drainage district organized under that act to levy a uniform tax of not more than fifty cents per acre, to be used for purpose of paying expenses in organizing district, etc., does not apply to a drainage district organized under statutory provisions existing prior to year 1905, and which district did not reorganize as permitted under section 52 of the Act of 1913.

5. ——: ——: Proceeding to Extend Corporate Life and Boundaries of Drainage District Held not a Reorganization Thereof under Later Act Empowering Drainage Districts Organized Thereunder to Exercise Powers of Taxation Conferred Thereby. In an action by a drainage district organized prior to 1905, where it was contended that the proceeding was to extend its corporate life and

boundaries and was thereby a reorganization of the district under sections 5499, 5500, Revised Statutes, 1909, and Laws of 1913 p. 266, section 62, providing that such districts might reorganize under such sections in the manner therein required, *held* not a reorganization of the district under the Act of 1913, empowering drainage districts to exercise powers of taxation granted thereby, in view of section 53, of the Act of 1913, as to the procedure to be followed for reorganization thereunder.

6. ———: ———: Construction: **Statute Held Not to Empower Drainage Districts Organized Prior Thereto to Exercise Powers of Taxation Authorized Thereby.** Section 58, Laws of 1913, p. 265, in reference to drainage districts, provides that where proceedings have been begun under laws repealed by Act of April 8, 1905, (Laws 1905, p. 190), they may be completed under the Act of 1913, and that where districts have been incorporated under said repealed sections, rights or obligations incurred shall not be nullified, and section 61 thereof, authorizing officers of districts organized prior to April 8, 1905, to proceed under the article to which the Laws of 1913 were amendatory, *held* not to empower a district organized prior to 1905 to exercise powers of taxation granted by the Laws of 1913 without reorganizing thereunder in the manner therein required.

7. ———: ———: ———: **Failure of Drainage District to Reorganize under Later Statute so as to Entitle it to Exercise Powers of Taxation Therein Granted is not a Mere Irregularity Which a Liberal Construction can Overlook in View of Remedial Character of Objects Sought to be Accomplished by Such Districts.** The failure of a drainage district organized in 1900 to reorganize under Laws of 1913, p. 232, so as to be entitled to exercise the powers of taxation therein granted is not a mere irregularity which a liberal construction can overlook in view of the remedial character of the objects sought to be accomplished and the requirement that upon organization or reorganization a majority of acreage in district shall sign articles to that effect, and because of the fact that owners of land outside district as originally organized were not entitled to be counted in determining whether a majority has been secured.

Appeal from the Circuit Court of Holt County.—*Hon. Alonzo D. Burnes,* Judge.

REVERSED.

*W. H. Richards* and *Strop & Mayer* for respondent.

*Culver, Phillip & Voorhees* for appellant.

TRIMBLE, P. J.—Herein a drainage district sues a landowner to enforce the payment of a tax upon his land levied in 1919 for the purposes hereinafter stated. Judgment was rendered enforcing the tax, and defendant has appealed.

Three grounds are relied upon to defeat the tax.

First, that the district has *no power* to levy the tax or any tax *for the purpose* for which this one was levied. *Second.* That the district had no corporate existence at the date this suit was brought (August 14, 1920), it having been incorporated on May 22, 1900, for a period of twenty years which had elapsed before the institution of this suit, and hence it could not be maintained. (In this connection, defendant asserts that the proceedings culminating in a decree, rendered January 22, 1917, purporting to continue the life of the corporation for fifty years, are void upon their face.) *Third,* That defendant's land was not within the boundaries of the district as originally incorporated, and the proceedings resulting in the decree of January 22, 1917, which also purported to extend the boundaries so as to include defendant's land, are likewise void upon their face.

If plaintiff is without *power* to levy the tax or a tax *for the purpose* for which this one was levied, that, of course, disposes of the case and renders unnecessary any discussion of the other two grounds.

We cannot uphold plaintiff's point that the district's lack of power was not raised in the trial court. The answer, in addition to setting up the other two defenses, contained a general denial. Plaintiff is asserting a cause of action by virtue of the tax, and defendant, under his general denial, is asserting that the cause of action relied upon never had any existence because the district had no power to levy the tax. [State ex rel. v. Rau, 93 Mo. 126, 130; Young v. Glasscock, 79 Mo. 574, 576; City of Chillicothe v. Meek, 136 Mo. App. 468, 474.]

In order to set forth as cleary as possible the defense

of the district's lack of power to levy such a tax—i. e., a flat uniform tax of fifty cents per acre upon *all* the lands in the district *for the purposes enumerated* in the levy, it is perhaps necessary to state the following:

The proceedings for the incorporation of the district clearly show, upon their face, that the district was incorporated on May 22, 1900, for a period of twenty years, by a decree of the circuit court of Holt County, Missouri, under and by virtue of sections 6517 to 6730, both inclusive, Revised Statutes 1889, the whole being, at the time of the incorporation, embodied in and constituting sections 8251 to 8265, both inclusive of article 3, chapter 122, Revised Statutes 1899. Plaintiff's petition, in the suit at bar, alleges that the plaintiff district "*now is* and has been *at all times hereinafter mentioned* a public corporation . . . organized and existing as a drainage district under and by virtue of the provisions of article III of chapter 122 of Revised Statutes of Missouri for 1899, and especially under the provisions of sections 8251, 8252 and 8253 of said statutes and acts amendatory thereof.''

Section 8251, thus referred to, provided that: "A majority in interest of the resident owners in any contiguous body of *swamp or overflowed* lands in this State, may form a district for the purpose of having *such* lands reclaimed and protected from the effects of water, by drainage or otherwise,'' etc. The petition for incorporation stated, and the decree of incorporation found, that the petitioners and incorporators constituted "a majority in interest of the resident owners of a contiguous body of *swamp and overflowed* lands'' in Holt County, Missouri, and that they associated "themselves together for the purpose of having said lands reclaimed and protected from the effects of water, by drainage or otherwise.''

About 24,000 acres of land were included within the boundaries of the district as petitioned for, but the court, in the incorporating decree, found that about 4500 acres were lands not proper to be included, and, therefore, ex-

cluded them, leaving about 19,500 acres in the district as incorporated.

The only power to levy a tax, conferred by the law under which the district was thus organized is contained in section 8262, Revised Statutes 1899, which provided that:

"As soon as the said drainage district shall have been organized as aforesaid, and in order *to defray the expenses* for said topographical survey, and *constructing any ditch*, drain, dyke or other works, *maintain the same, and to pay such officers, servants and employees* as are allowed to compensation by law," the board could order "the assessment of a tax, not exceeding fifty cents on each acre of land situate in said district *to be benefited*, and not excluded by court, for each and every year, and until no further expenditure of money in that behalf shall be necessary."

It is shown upon the face of the proceedings, hereinafter referred to, that the district adopted a "Plan for Drainage," but that the plan was never completed for lack of funds, that none of the dikes and levees were ever completed or constructed; that the lateral ditches were never completed; that the new channel for the waters of Kinsey Creek watershed was never dug; that because of the inability to complete said works and because the waters of said watershed flowed into, over, across and beyond the channel of the "Squaw Creek Ditch," the same filled up in places and no channel remained, and, for its entire length, it became insufficient, so that the course of *flood waters* was changed and diverted and no longer followed the flow of the waters in said basin to the river, but were *cast westward over* and upon *lands that were included* in said district, and upon *other lands not included* in the original incorporation.

Such was the condition affairs in the district had gotten into by June, 1916, as shown on the face of the records of the board, at which time the district undertook to prolong its corporate life and extend its boundaries, as hereinafter explained.

In the meantime the Legislature, by various acts, had amended the statutes under which the district was operating, as follows: By an Act approved April 8, 1905 (Laws 1905, p. 190), an Act approved June 14, 1909 (Laws 1909, p. 618), an Act approved June 1, 1909 (Laws 1909, p. 628), and an Act approved March 30, 1911 (Laws 1911, p. 205). The statutory law governing the district, as thus amended (with the exception of the 1911 Act), afterwards became article 1, chapter 41 of the Revised Statutes 1909, and appeared in that revision as sections 5496 to 5541, both inclusive.

Section 5496, Revised Statutes 1909, is the same as the law had theretofore been, so far as the *character* of the lands authorized to be included in the district, that is to say, "a majority in interest of the owners in any *contiguous* body of *swamp or overflowed* lands" could form a drainage district "for the purpose of having *such* lands reclaimed and protected from the effects of water, by drainage or otherwise."

Section 5499, Revised Statutes 1909, provided that— "the time for which said drainage district is so incorporated may, if necessary to properly complete the plan or system of drainage adopted, or to raise the money by assessments to pay for the work contracted, or to pay the bonds that have been issued therefor, or to properly maintain and keep in repair the said drainage system and improvements, *be extended* by the circuit court of the county in which said district . . . lies," etc., after the district had voted in favor thereof.

Section 5500, Revised Statutes 1909, provided that— "Any drainage district, organized under the provisions of article 1 . . . of this chapter, *may be enlarged and the boundaries extended so as to include other lands contiguous thereto* in the following manner:" That is, by filing a petition in the circuit court and having summons issued to and served upon the resident owners and notice by publication given to the non-resident owners.

Section 5534, Revised Statutes 1909, preserved to the districts theretofore organized the right to complete,

under the 1905 act all proceedings theretofore begun under the repealed sections and the liens, remedies and processes for the collection of taxes, given by the 1905 act "so far as applicable" were made available for the collection of taxes levied and the payment of bonds issued under the repealed sections.

In view of the situation and condition existing in the district in 1916 as herein before stated, the board of supervisors, on June 9, 1916, ordered that a meeting of the landowners in the district be held on July 5, 1916, for the purpose of voting on the extension of the corporate existence of said district for a period of fifty years. And, at the same meeting of the board in which the above order was made, the board also found that—"by reason of the *cutting of a new channel* for the waters of the *Little Tarkio* and watershed and basin lying to the northward and westward of this district, and of the *failure of the Little Tarkio Drainage District* to *build*, erect and maintain adequate and *sufficient levies* on the easterly side of the new ditch cut by it to *confine the floods* to that *channel and basin*, and *to prevent said waters from* being cast and *flowing Southerly and Easterly therefrom into and over a large area of the lands of this district*" . . . and that by reason of the facts that—"suitable provision has not been made for the intake of the *flood waters* from the Squaw Creek watershed and also that insufficient provision has been made for the *intake of the watersheds* of (certain named creeks) and the *surface waters from these sources*, and from the highlands lying to the northward and westward of this district . . . and that insufficient provision has been made for the intake of *surface and flood waters* from the lands lying to the westward of said district . . . and that suitable provision has not been made for an outlet for said *flood waters* . . . and that the waters of Kinsey Creek have flowed westward across and beyond the main channel of the Squaw Creek ditch, and has filled the same up, making it necessary to widen, deepen and enlarge all ditches and drains, to change and

alter the same, and to provide other and more adequate
outlet for waters in and flowing into said basin, *it is
necessary for the protection and reclamation of said
lands* that the *boundary lines* of the district *be changed
and enlarged so that certain lands,* which were *excluded
from taxation at the date of the formation of the district*
and *other outlying and contiguous lands,* be included."

It was thereupon ordered that proceedings be in-
stituted for the, "extention of the boundary lines of the
district *to include all the 'ands within the same* and those
*not now included* in said district as organized."

It should be remarked here that defendant's land,
on which the tax involved herein is levied and sought to
be enforced, was not within the bounds of the district as
originally incorporated, but is within the boundaries to
which the board desired, and afterwards sought, to have
the district extended.

On July 5, 1916, the meeting of the landowners or-
dered by the board was held, and the proposal to extend
the corporate existence of the district for a period of
fifty years was carried by a vote of 10,444 acres as
against 2175 acres voting against it.

Thereupon, on the same day, July 5, 1916, the dis-
trict filed its petition in the circuit court of Holt County,
Missouri, in two counts, the first praying for the extension
of the corporate existence of the district and the second
for the extension of its boundaries.

In the first count of said petition it was alleged that
the district adopted a "Plan for Drainage" but that the
plan was never completed because of the inability of the
board to raise sufficient funds; that none of the dikes
and levies were ever completed or constructed, that the
lateral ditches were never completed; that the new chan-
nel for the waters of the Kinsey Creek watershed was
never dug; that by reason of the inability to complete
said works and for the reason that the waters from the
Kinsey Creek watershed emptied into and flowed over,
across and beyond the main channel of the Squaw Creek
ditch, the same has filled up in places so no channel

remains, and, for its entire length, is insufficient and inadequate, and by the deposit of silt the course of flood waters has been changed and diverted therefrom and now do not follow the original flow of the waters in said basin to the river, but are cast westward over and upon lands that were included in said drainage district, and upon other lands not included in the original corporation, making it necessary to raise funds to complete the "Plan of Reclamation," pay for works already completed, pay bonds outstanding and interest thereon, and on the same, restore works that were completed and have been destroyed and rendered useless and ineffectual by reason of the inability of the board to raise funds to maintain and repair the same, to construct new works and to provide other and more adequate means for drainage and reclamation for the lands included in said Squaw Creek Drainage District No. 1 "and for other contiguous and outlying lands," thereby making it necessary that the time for which said drainage district was incorporated should be extended for fifty years. Said petition in said first count, further stated that the said extension of time for the corporate existence of said Squaw Creek Drainage District Number 1, and the completion of the works of the original plan, or by the widening and deepening of channels originally dug and constructed, or by changing and altering the same, or of adopting other and additional plans for the drainage and reclamation of the lands of said original district as the same was petitioned for, "all of which is a contiguous body of swamp and overflowed lands, *or lands subject to overflow*" is a matter of public necessity for sanitary and agricultural purposes, and that the reclamation of the same by drainage or otherwise, will be conducive to the public health, convenience and welfare, and of great utility and benefit.

The meeting at which the proposal to extend the corporate existence of the district, the notice given therefor and the result of the vote, were then alleged and the first count closed with a prayer for a decree "avoiding and holding for naught the decree, so entered as aforesaid,

incorporating Squaw Creek Drainage District No. 1 and that the court by its decree . . . extend the corporate existence of said drainage district for a period of fifty (50) years, by re-incorporating the same'' etc.

The second count of the petition set forth the condition of the drainage system in the district and its inadequacy as has been heretofore stated as found by the board, thereby ''making it necessary to construct new works and to provide other and more adequate means for drainage and reclamation of the lands included in said Squaw Creek Drainage District No. 1 and for other contiguous and outlying lands.''

The petition further alleged that upon the hearing for the original incorporation the court trying the same excluded a large number of acres embraced in the boundaries as petitioned for ''which resulted in leaving some tracts isolated and not contiguous to the other lands included within the said drainage district.''

The said second count then alleged the conditions herein before stated arising from the inadequacy of the system of the Little Tarkio Drainage District whereby ''new and additional *flood waters* are now cast upon the lands in the Squaw Creek Drainage District basin lying to the south and southeast thereof, making it necessary to extend the original boundary lines of the said Squaw Creek Drainage District No. 1 along the northerly and easterly sides thereof in order that suitable intake for such flood waters may be provided, as well as to provide suitable intake for the flood waters from Squaw Creek valley and watershed, and to provide suitable intake for the flood waters from the watersheds of (certain named creeks) and for surface waters coming from the uplands lying to the eastward and northward of said territory and from every source, and from surface water flowing upon and across the lands in said district from lands lying to the westward of said district along the southerly end thereof; and . . . that in order to provide suitable and adequate outlet for the ditches necessary to be dug, constructed and maintained and for construction of

the necessary dykes and levees or revetments to fully and adequately protect all of said lands, it will be *necessary to include all of the lands that were excluded by the court* in organizing said Squaw Creek Drainage District No. 1 as well as to *include* certain *other contiguous and outlying lands,* and all of which are wet, swamp and over-flowed lands, *or lands subject to overflow,"* etc. After alleging that it would be necessary to have the damages and benefits assessed to pay the expense, the court was then asked to extend the boundary lines as therein set out, which included defendant's land within the proposed extension.

On January 22, 1917, the court rendered a decree finding that—"since the incorporation of the said Squaw Creek Drainage District No. 1, by reason of the changing of water courses lying to the northward and westward thereof, new and additional flood waters are now cast upon the lands in Squaw Creek Drainage basin, making it necessary to extend the original boundary lines of said Squaw Creek Drainage District No. 1 along the northerly and easterly sides thereof, in order that suitable intake for such flood waters and protection against the same may be provided.

"The court further finds that it will be necessary to extend the original boundary lines of the said drainage district along the easterly sides thereof in order to provide suitable intake and protection for and from the flood waters from the Squaw Creek valley watershed, and to provide suitable intake for a protection from the flood waters from the watersheds of (naming certain creeks) and for and from surface waters coming from the uplands lying to the eastward and northward of said territory from other sources, and from every source, and from surface waters flowing upon and across the lands in said district from lands lying to the westward of said district along the southerly end thereof.

"The court further finds that in the incorporation of the original district there were some four thousand five hundred (4500) acres embraced within the boundary of

the original boundary lines as petitioned for in said district excluded therefrom.

"The court further finds that in order to provide suitable and adequate outlet for the ditches necessary to be dug and constructed and maintained, and for construction of the necessary dikes, levees or revetments to fully and adequately protect all of said lands, that it would be necessary to include all of the lands excluded by the court in the decree organizing said Squaw Creek Drainage District No. 1, as well as to include certain other contiguous and outlying lands, all of which are wet, swamp and overflowed lands *or lands subject to overflow,* by reason of their character and location for sanitary and agricultural purposes in order that they may be protected from the effects of flood waters and surface waters from all sources, and as being conducive to the public health, convenience, and welfare, and of public utility and benefit . . .

"The court further finds that the proposed change in the boundary line of said district and the proposed annexing of the lands originally excluded by the court upon the organization of the same, and the proposed including certain other outlying lands all as aforesaid, all of the lands in said original Squaw Creek Drainage District No. 1, and all of said contiguous and outlying lands will be benefited, drained, reclaimed, and protected from overflow and from the effects of water, and that the same is necessary for sanitary and agricultural purposes, and as being conducive to the public health, convenience and welfare and for public utility and benefit.

"The court further finds that it will be necessary to have commissioners appointed to assess the benefits and damages to defray the costs of this proceeding, and for the extension of the corporate period of said district, and the extension of the boundary lines thereof, and to pay for the works and improvements that will be necessary to be made for the protection and reclamation of the lands within said Squaw Creek Drainage District No. 1, so prayed to be reincorporated and extended, and for

widening, deepening, changing and altering old drains, and for completing and constructing new works found necessary, and that it will be necessary to have the damages that may result to any tract of land by reason of said works and improvements or by reason of the taking of said lands or parts thereof for rights of way, holding basin, or other use for the purpose of completing said works and improvements, assessed, and the necessary land for rights of way, holding basins or other lands or taken for any other use of said district, condemned for said works either within or without said district, and assess the benefits that will accrue to all of said lands by reason of the completion of said improvements assessed.''

Thereupon, it was decreed that—''the corporate existence of said Squaw Creek Drainage District No. One, be and the same is hereby extended for a period of fifty (50) years from the 22nd day of May, A. D. 1920, with all the rights, privileges, duties, and powers conferred upon it as a drainage district, a public corporation of the State of Missouri.

''It is here by the court further ordered, adjudged, declared and decreed that the boundary lines of the said drainage district be and they are hereby extended as prayed for in said petition and as herein found by the court, to embrace all of the lands herein specifically set out and described as being embraced therein for the purpose of protecting and reclaiming all of the lands within the boundary lines of said drainage district, as the same have been extended by this judgment and decree from the effects of all water from any source, by the construction and maintenance of canals, ditches, drains, lateral drains, dikes and embankments, to restore works in said drainage district, or construct new works or in any manner provide ways and means for the reclamation of all lands or other property situate, lying and being in and within the boundary lines of said drainage district as herein declared and fixed by the court.

''It is further considered, and ordered by the court the prayer of said petition for the appointment of com-

missioners be not granted until at and such time as the board of supervisors of said drainage district shall have adopted a complete plan for reclamation for all of the lands within the boundaries of said district as extended by the court herein, and shall file a duly certified copy of the same in the office of the clerk of this court.

"It is further considered, ordered and adjudged by the court that the court costs herein laid and expended be and the same are hereby adjudged against the objectors herein, and that execution issue therefor."

Thereafter, on August 13, 1919, the Board of Supervisors, held a meeting on that date to "consider the levy of *a preliminary tax* of fifty cents per acre on each acre of land within the extended boundary of said proposed drainage district for the year 1919."

The record of the meeting further recites that—"it is considered by the board of supervisors of Squaw Creek Drainage District No. 1, that for the purpose of *paying the costs* of the *proceedings for the extension of the corporate period* of the district, and *for the extension of the boundaries* thereof, and for the *purpose of making surveys* in said district, and *assessing benefits* and *damages,* and *to pay other expenses,* necessarily to be incurred . . . there is hereby levied a tax of uniform rate of fifty cents per acre upon each and every acre of land, or fraction thereof, situated within the extended boundaries of said district," etc.

The only authority to levy a tax granted by the statutory sections hereinbefore referred to, is found in sections 5519, 5535 and 5538, Revised Statutes 1909. The first of these provided for the levying of a tax on the lands in the district *to which benefits have been assessed,* equal to the cost of the drainage works plus the expense of organizing the district, the probable administration expenses and the damages in the completion of the works and the carrying out of the objects of the district. Such costs and tax were to be apportioned and levied on each tract of land or property in the district *in proportion to the benefits assessed* and not in excess thereof.

The second of these, (section 5535, R. S. 1909), provided that—"In all cases where drainage districts have been organized, under proceedings in any circuit court of the state, *prior to April 8, 1905,* the board of supervisors, instead of having commissioners appointed to assess benefits and damages, may, for the purpose *of constructing drainage works in their districts,* as well as for the purpose of *maintaining and keeping same in repair,* and *for paying principal and interest upon bonds,* if any are issued, levy each year, so long as necessary, a level rate of taxation not exceeding fifty cents in any one year, upon each acre of the lands in said district," etc.

The third of these, section 5538, authorized a levy of not exceeding twenty-five cents per acre, to be levied as *soon* as any drainage district *shall have been organized* under order of the circuit court, for purpose of *paying expenses of organization,* for surveys, plans of drainage, expenses of assessing benefits and damages and other incidental expenses before entering upon the *main work* of drainage.

It seems clear that none of the three sections above mentioned authorized the levy of a tax for the purpose for which the one in suit was levied. Section 5519 contemplates that there will be an assessment of benefits and damages, and a tax on the lands to which benefits have been assessed, equal to the cost of the drainage works plus the organization and administration expense, damages, completion of the works and the carrying out of the objects of the district, and the tax is not a uniform flat tax on all lands in the district, but is apportioned to and levied in proportion to the benefits assessed and not in excess thereof. Section 5535 provides for a flat uniform tax not to exceed fifty cents on each acre, and applies to districts organized in the circuit court prior to April 8, 1905, as the plaintiff district was, but that is a tax where the board *"instead* of having commissioners appointed to assess benefits or damages," i. e., *instead* of levying the tax provided for in section 5519, may "for the purpose of constructing drainage works . . . as well as for

purpose of maintaining and keeping same in repair, and for paying principal and interest upon bonds'' levy a level rate not to exceed fifty cents, etc. In other words, this section gives a district the power to pay for the drainage by levying a fifty-cent tax where such is adequate to accomplish that end, in lieu of the other method.

But it is apparent that such is not the purpose for which the tax in question is levied. On the face of the record it is merely a *preliminary* tax to pay the costs of *extending the corporate life* of the district as formerly organized and of *extending the boundaries,* and for the *assessment of benefits and damages* and any other expenses *necessarily to be incurred.* Manifestly, the cost of constructing the drainage works is *hereafter* to be obtained by levying a tax under the assessment plan provided for in section 5519, but this tax is a tax *preliminary* thereto and not for the purposes specified in section 5535, but for the payment of certain costs which, by the decree of the court, were adjudged against the objectors in that proceeding. And it will be observed that in the decree, the court finds that ''it will be *necessary* to have *commissioners appointed* to assess the benefits and damages to defray the costs of this proceeding, and for the extension of the corporate period of said district and the extension of the boundary lines thereof, and to pay for the works and improvements that will be necessary to be made for the protection and reclamation of the lands'' etc., but the prayer for commissioners will not be granted ''until at and such time as the board . . . shall have adopted a complete plan for reclamation for all of the lands within the boundaries of said district as extended by the court.'' Section 5538, of course, is no authority for the levying of the tax involved herein, and applies to the payment of the preliminary costs when a district is *first* organized and *before* the main work is begun.

So that the tax levied by the board, and herein sought to be recovered, is not authorized by any of the statutory provisions heretofore considered.

However, by an Act approved March 24, 1913 (Laws 1913, p. 232), the Legislature repealed article 1, chapter 41, Revised Statutes 1909, together with the amendments thereto of 1911, and enacted a new article in lieu thereof. And in section 11 of said Act (Laws 1913, p. 238) it is provided that—

"The board of supervisors of any drainage district *organized under the provisions of this act,* shall, as soon as elected and qualified, levy a uniform tax of not more than fifty cents per acre upon each acre of land within such district, as defined by the articles of association, to be used for the purpose of *paying expenses incurred or to be incurred in organizing said district, making surveys of the same and assessing benefits and damages and to pay other expenses necessary* to be incurred *before* said board shall be empowered by subsequent provisions of this act to provide funds to pay the *total cost* of works and improvements of the district. In case the boundary lines of the district be extended under the provisions of a subsequent section of this act, so as to include lands and other property not described and contained in the articles of association, the same uniform tax shall be made in such lands and other property as soon as same shall have been annexed and included in the district." (We have been unable to find any "subsequent provision of this act" empowering an extension of boundaries, though section 46 does authorize an extension of the corporate existence).

This section, if available to the plaintiff district as the same is now organized, would doubtless be sufficient to authorize the tax involved herein, as the purposes for which it was levied are largely within the general purposes of the statute, But the question arises, is the power contained in this section granted to the plaintiff district, organized as it is under the statutory provisions existing prior to the enactment of the Act of 1913?

The section gives the power to any drainage district "organized under the provisions of *this act.*" The plaintiff district was organized under statutory provisions

existing *prior* to the passage of the Act of 1905 (which later became, with the other existing statutes on that subject, article 1, chapter 41, Revised Statutes 1909) and hence, under section 52 of the Act of 1913 (Laws 1913, p. 263), it could proceed under the new 1913 Act *only by electing to be reorganized* under that Act in the manner provided in the new act. [State ex rel. v. Little River Drainage District, 269 Mo. 444, 459-60; State ex rel. v. Little River Drainage District, 271 Mo. 429, 435.]

It is suggested that the proceeding to extend the corporate life and the boundaries of the plaintiff district in 1916 was a virtual reorganization of the district under Act of 1913. But clearly they were not. The election held by the district on July 5, 1916, and the question voted on thereat, was not as to whether the district should be reorganized under the Act of 1913, but simply whether its corporate life, *as organized*, should be extended for a period of fifty years. And the decree of court merely decreed that, and extended the boundaries. Sections 5499 and 5500, Revised Statutes 1909, authorized such proceedings, and the district's right to proceed thereunder was preserved to it by section 62 of the Act of 1913, although as to the formation of any new districts, such sections were repealed. Furthermore, section 53 of the Act of 1913 provides that: "any district heretofore organized . . . may organize under the provisions of this act, and *after so organized* shall be entitled to the benefits of all of the provisions of this act" and that when any district "heretofore organized" desires to reorganize under the Act of 1913, the owners of a majority of acreage in the existing district shall sign articles of association which shall set forth certain facts, among which are that "the boundaries of the district *will be the same* as the boundaries of the *present* organization" and that the land and owners thereof "are such as are described in the *present record* of the district as *now* organized." And the articles of association "shall contain a petition praying that the lands of said district *be declared a drainage district under the provisions of this act.*" Nothing of

this kind whatever was done, and until a proceeding has been had, based on such foundations, the district has not elected to become reorganized under the 1913 Act, and is not entitled to exercise the powers granted by that act. Indeed, if we are correct in saying there is no section in the 1913 Act authorizing an extension of *boundaries*, then clearly the court in the decree of August, 1916, was extending the boundaries of the *old* district under the 1909 law and could not be regarded as extending the boundaries of the district, reorganized under the 1913 Act.

It is urged that sections 58 and 61 of the 1913 Act give the plaintiff district the right to exercise the new powers granted by that Act. But section 58 merely provides that where *proceedings have been begun* under laws repealed by the Act of 1905, they may be completed under the new act; and that where the work of drainage has been commenced or completed no "rights or obligations incurred" shall be nullified. And section 61 merely provides that the Act of 1913 shall not prevent the officers of a district organized prior to April 8, 1905, "from proceeding *under the article to which this is amendatory,*" etc. No *new* powers are granted by either of these sections to the previously organized districts, but the sections merely relate to the exercise of, or the manner of exercising the *powers they already had.* To hold that these two sections enable the plaintiff district, without reorganization as required by sections 52 and 53, to exercise the power granted solely by the new act, is to nullify sections 52 and 53. Besides, we cannot say the Supreme Court, in the two cases heretofore cited, overlooked said sections 52 and 61.

From what has been said, it follows that since the power to levy the tax for the purposes for which it was levied, was not granted by any law except the 1913 Act, and as the plaintiff district did not elect to reorganize under the provisions of said 1913 Act so as to be entitled to exercise the new powers therein granted the suit to enforce the tax must fail.

This failure to reorganize under the 1913 Act is not a mere technical irregularity which a liberal construction can overlook in view of the remedial character of the objects sought to be accomplished by such districts. It will be observed that the statutory provisions prior to the 1913 Act related to "swamp or overflowed lands" and authorized the formation of districts "for the purpose of having *such* lands reclaimed and protected from the effects of water, by drainage or otherwise." The 1913 Act, however, deals with "swamp, wet or overflowed lands, *or lands subject* to overflow." There may be some question whether there is reason for saying that the statutes prior to the Act of 1913 dealt only with "swamp or overflowed lands" and not with lands "subject to overflow," in view of the fact that section 8253a of the 1905 Act (Laws 1905, p. 193), which later became section 5500, Revised Statutes 1909, authorized the extension of boundaries so as to include "other lands contiguous thereto," and section 8259, Laws 1905, page 194, which later became section 5511, Revised Statutes 1909, authorized the board of engineers to prepare a full and complete plan for draining and reclaiming the lands in said district from the *overflow of or damage by water on floods*," and section 8259b, Laws 1905, page 195, which later became section 5513, Revised Statutes 1909, provided that: In order to effect the drainage, reclamation and *protection from overflow* of the lands in said district" the board of supervisors could clean, deepen, widen or change the flow of any natural watercourse, pond, lake or bayou. The land authorized to be included in the organization of such districts were "swamp or overflowed lands" and the creation of the districts was 'for the purpose of having *such* lands reclaimed and *protected from the effects of water, by drainage or otherwise.* And when section 8253a of the 1905 Act, section 5500, Revised Statutes 1909, provided for the inclusion of *"other* lands contiguous thereto,"* it perhaps merely meant other lands that were in a *similar condition,* i. e., swamp or overflowed, and not such as were merely "subject to overflow."

(Otherwise, although a district could not, when incorporating, include other than "swamp or overflowed lands," yet, immediately after incorporating, it could extend its boundaries so as to include lands that were not "swamp or overflowed," but were merely "subject to overflow.") And sections 8259 and 8259b of the 1905 Act, sections 5511 and 5513, Revised Statutes 1909, in that view of the matter, would merely provide a method of protecting the swamp and overflowed lands that were properly in the district from *flood waters* after they had been reclaimed from their swamp or overflowed condition.

But, however this may be, the record shows that a large amount of land was *excluded* from the district when it was first created, and that afterward, when the boundaries were extended, taking in defendant's land, the record shows on its face that the lands included were *either* "swamp or overflowed lands" *or* "lands subject to overflow." Presumably they were the latter, since they were first excluded, and the proceedings to extend the boundaries imply, if they do not affirmatively state, that all the lands sought to be taken into the district are "lands subject to overflow." And whether such lands were subject to be included under the old law or not, and even if there is no room for any distinction between lands that are "swamp or overflowed" and lands that are merely "subject to overflow" nevertheless, until the method pointed out by statute for reorganization and for coming under said Act of 1913 is substantially followed, those landowners whose lands are merely "subject to overflow" are vitally and seriously affected since it is apparent from the provisions of the 1913 Act that neither a new district nor a reorganized district can come under that law until a "majority of acreage" in the district to be organized or coming in on reorganization, shall sign articles to that effect, In other words, the owners of lands outside of the district as originally organized, and whose lands are merely "subject to overflow," are *entitled to be counted* in determining whether a majority has been secured who are willing to go under the 1913

Act. If no such majority is first secured no subsequent steps can be taken, and section 53 of the 1913 Act provides that the district reorganized and coming in under that Act shall have the *same boundaries* as before. But, under the method pursued by the plaintiff herein, the landowners outside of the original incorporation were not permitted to have any part in saying whether a majority had been first secured, but were only afforded an opportunity to defend in court against being taken into the old district by an extension of boundaries, where the determining factor was the character and condition of their lands whereby they were properly to be included in the old district. Of course, if the old district was not entitled to take in lands merely "subject to overflow" the owners of such lands so taken in by the extension of the boundaries of the old district, would have a still greater grievance.

The conclusion that the district was without power to levy the tax for the purposes for which it was levided, disposes of the case and renders unnecessary any decision on the other two defenses raised.

The judgment is reversed. All concur.