Earl WATTS et al., Respondents,

v.

Edward L. GROSS et al., Appellants.

No. 25452.

Kansas City Court of Appeals,
Missouri.

April 5, 1971.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 7, 1971.

Wayne H. Hoecker, Jefferson City, for appellants.

Raymond C. Lewis, Jr., Columbia, W. B. Nivert, Jr., Glasgow, for respondents.

HOWARD, Judge.

This is an appeal from the judgment of the circuit court of Howard County, Missouri, enjoining the appellants as the purported Board of Supervisors of Levee District No. Two of Howard County, Missouri, and the county collector, from levying and collecting levee district taxes and mandatorily requiring the purported Board of Supervisors to wind up and liquidate the business of the district. We shall refer to the parties as they appeared below.

Plaintiffs are the owners of three tracts of land, parts of which were included within the boundaries of said levee district. The suit was brought as a class action wherein the plaintiffs purported to represent all of the owners of land within the district. At the trial no evidence of proper representation was adduced and at the conclusion of the evidence, the plaintiffs announced that "the matter of the class action was dropped" and the plaintiffs proceeded as individuals.

The important matters of record were stipulated and it appears that the levee district was organized on January 11, 1910, by the circuit court of Howard County, Missouri, under the provisions of Article 7 of Chapter 122, Revised Statutes of Missouri, 1899. Section 8251 of the 1899 revision required that the Articles of Association for such levee district state: "the number of years the same is to continue." Pursuant to this requirement, the Articles of Association for the levee district here in question recited: "This corporation shall continue for a term of fifty years." The decree of the circuit court declared the district to be a public corporation of the state of Missouri and recited that the Articles of Association provided that such association should continue for fifty years. Such fifty year period expired on January 11, 1960.

It appears that since that date, the levee district has continued to function without regard to such expiration. It has held annual meetings, elected officers and levied maintenance taxes upon the lands within the district, which taxes have been collected, the proceeds turned over to the secretary of the levee district as ex officio treasurer thereof, and expended for purposes of the district. Taxes for the year 1968 were levied and at least some part of them collected. The individual plaintiffs did not pay their 1968 taxes and the same are considered delinquent by the district. Tax bills, including the levee taxes for the year 1969, had been sent out just prior to time of trial but it does not appear that any such taxes had been collected.

The trial was conducted on the assumption that the sole issue presented was whether or not the levee district had ceased to exist at the expiration of the fifty year limitation contained in the Articles of Association, on January 11, 1960. No question was raised at the trial as to the scope of relief to which the individual plaintiffs were entitled, probably because the petition was drafted as a class action and it did not descend to an action by the individual owners of three tracks of land until the termination of the trial.

At its organization in 1910, the district included 21 tracts of land which aggregated more than 5,000 acres. The number of tracts presently existing in the district does not appear in the record; neither does the amount of land within the district owned by the individual plaintiffs appear. It is brought out that each of the three tracts owned by plaintiffs is bisected by the district levee. Thus, each tract consists of land within and without the district but the total acreage owned by plaintiffs within the district does not appear. Such factual void, of necessity, raises the question of the scope of relief to which plaintiffs are entitled but this question was not litigated or determined in the trial court and has

not been properly presented for determination on this appeal.

The central issue litigated below and presented on this appeal is whether the district is now an existing legal entity or whether it ceased to exist on the expiration of the fifty year limitation contained in its Articles of Association (January 11, 1960). In this connection, it is noted that the present statute, Section 245.015, RSMo. 1969, V.A.M.S., remains unchanged in this regard and requires that the Articles of Association of such a levee district must state "the number of years the same is to continue." By contrast, the statutes make no provision for a time limitation on the life of a levee district organized by the county court and such districts would presumably continue forever unless dissolved by the legislature or by a procedure provided by the legislature. See State ex rel. and to Use of Behrens v. Crismon, 354 Mo. 174, 188 S.W.2d 937, and In re City of Kinloch, 362 Mo. 434, 242 S.W.2d 59.

Plaintiffs contend that the levee district ceased to exist on January 11, 1960 by operation of law because its life was limited to fifty years by the Articles of Association and such fifty year period expired on that date. Defendants contend that the district continued to exist as a legal entity because it continued to perform its functions and that it was, at least, a de facto corporation which cannot be attacked by these individual plaintiffs; that its valid existence can only be questioned by the state in a quo warranto proceeding. Under the authorities, we are constrained to agree with plaintiffs and deny defendants' contention.

▉ It is apparent that the levee district here in question is a public corporation and a governmental subdivision of the state of Missouri; that it is not a private corporation, see Mound City Lake & Stock Co. v. Miller, 170 Mo. 240, 70 S.W. 721, and as such, a resident landowning taxpayer cannot attack the regularity and legality of its organization, Spiking School Dist.

No. 71, De Kalb County v. Purported "Enlarged School District R-11, De Kalb County, Missouri", 362 Mo. 848, 245 S.W. 2d 13. An attack upon the regularity and legality of the organization of such a subdivision of the state can only be maintained by the state itself in a proceeding in the nature of quo warranto. See also Spilker v. Bethel Special School Dist. of Shelby County, Mo.App., 235 S.W.2d 78; and Lane v. Finney, Mo.App., 274 S.W.2d 521. However, it should be noted that the plaintiffs are not here attacking the regularity or the validity of the organization of the levee district. Rather, they are contending that, by reason of the fifty year limitation contained in the Articles of Association, the district ceased to exist by operation of law; that such cessation appears on the face of the record and that the individual plaintiffs can, therefore, attack the present existence of the district. They point out that where the defect appears on the face of the record, the organization cannot have de facto existence and that collateral attack is permissible. In this instance, they rely on State ex rel. Hand v. Bilyeu, Mo.App., 346 S.W.2d 221. See also Pearson Drainage Dist. v. Erhardt, 239 Mo.App. 845, 201 S.W.2d 484, and cases cited therein. We, therefore, hold that plaintiffs can properly raise the issue of the legal existence of the levee district in this proceeding; that such question is not reserved to the state in a quo warranto proceeding for that purpose.

Defendants next contend that even if the existence of the district has legally terminated, it still has de facto existence and that the individual defendants are de facto supervisors of the district and that their actions are valid. We cannot agree with such contention. In Bradley v. Reppell, 133 Mo. 545, 32 S.W. 645, it was held that where a corporate charter expired by the passage of time as limited in such charter, the corporation is both de jure and de facto dead; that in such circumstances the corporation ceased to exist as a separate entity and that any powers in relation thereto resided in its last officers and

board of directors as trustees. See 1 McQuillin, Municipal Corporations, 3d Edition, Sections 3.48, 3.49 and 3.50. Such trustees could not continue to conduct the business of the corporation but could only pay the debts of the corporation and liquidate the business. It has been otherwise expressed that where the law ceases to authorize the existence of the corporation, the corporation expires as a matter of law. This doctrine is said to apply to both private and public corporations alike, Meramec Spring Park Co. v. Gibson, 268 Mo. 394, 188 S.W. 179. It has been applied to semi-private corporations operating what would now be considered a public utility in the maintenance of a toll road in State ex rel. Hines v. Scott County Macadamized Road Co., 207 Mo. 54, 105 S.W. 752, and State ex rel. Allison v. Hannibal & R. C. Gravel-Road Co., 138 Mo. 332, 39 S.W. 910. It likewise applies under specific statutory authority to strictly private corporations. See Turner v. Browne, 351 Mo. 541, 173 S.W.2d 868; Leibson v. Henry, 356 Mo. 953, 204 S.W.2d 310; Clark Estate Co. v. Gentry, 362 Mo. 80, 240 S.W.2d 124; and Land Clearance for Redevelopment Authority of the City of St. Louis v. Zitko, Mo., 386 S.W.2d 69. As to private corporations, when the corporate powers are forfeited or cease to exist by limitation or otherwise, the directors and officers in office at the time of such forfeiture are constituted trustees of the corporation with power only to wind up its business and affairs, sell and liquidate its property and assets, pay its debts and obligations and distribute the net assets among the shareholders. See Section 351.525, RSMo., 1969, V. A.M.S. If such trustees or anyone else exercise or attempt to exercise any of the powers of the defunct corporation, they are deemed guilty of a misdemeanor and subject to criminal prosecution under the provisions of Section 351.530, RSMo 1969, V. A.M.S.

Defendants rely on Diekroeger v. Jones, 235 Mo.App. 1117, 151 S.W.2d 691, and State ex rel. Walker v. Big Medicine Drainage Dist. No. 1 of Sullivan and Grundy Counties, 355 Mo. 412, 196 S.W.2d 254, as demonstrating that the district or its trustees have some sort of existence after the limitation contained in its charter has expired. We cannot agree. In Diekroeger v. Jones, supra, suit was brought to enforce payment of drainage district bonds after the life of the drainage district had expired by reason of time limitation in its articles of association. The suit was against the surviving members of the last board of supervisors who were in office at the time the charter expired. The parties assumed, and the court's decision is based on a tacit approval of such assumption, that the district ceased to exist as a separate legal entity at the expiration of the time fixed in its charter. The court held that the last board of supervisors could be compelled, as trustees for the winding up the affairs of the district, to levy additional taxes to pay the valid obligations of the district lawfully incurred during its existence and which should have been paid during its lifetime. The court here specifically refers to the surviving supervisors as trustees who could be required to fulfill the obligation of the district. A similar result was reached by the supreme court in State ex rel. Walker v. Big Medicine Drainage Dist. No. 1 of Sullivan and Grundy Counties, supra. There, the court required the survivors of the last board of supervisors to levy additional taxes to pay for the repairing of bridges carrying public roads across the district drainage ditches. It was found that it was the obligation of the district to construct, maintain and repair such bridges; that they were out of repair before the charter of the district expired and that the district was then obligated to make such repairs and the surviving members of the last board of supervisors could be compelled to fulfill the obligations of the district even after its charter had expired.

We cannot agree with defendants that this shows a continuing existence of the district. On the contrary, the decision of the court in both cases assumes and is bot-

tomed upon the demise of the district as a legal entity. The court in each instance seized upon the last board of supervisors as being those responsible for the winding up of the affairs of the district and fulfilling its obligation. Such surviving supervisors were forced to take the action that the district should have taken to fulfill the obligations validly incurred while the district was an operating legal entity. If the district itself had continued to exist, there would have been no problem in forcing the existing district to fulfill its obligation.

The parties also cite two cases decided in this court involving the Squaw Creek Drainage District. They are Squaw Creek Drainage Dist. No. 1 v. Hopper, 213 Mo.App. 27, 245 S.W. 1092, and In re Squaw Creek Drainage Dist. No. 1, 221 Mo.App. 911, 289 S.W. 19. The district was organized in 1900 for a period of 20 years. In 1916 it attempted a reorganization and a 50 year extension of its life under the Laws of 1913. It then purported to levy a tax authorized by the Laws of 1913, but which was not authorized under the laws by which it was organized. In the Hopper case, this court held that the district was not authorized to levy the taxes in question and in the later case, the attempted reorganization was found to be void. The second case involved proceedings instituted after 1920 to extend the life of the district. In this case, the court states that the defendants conceded that if the 1916 reorganization was void, then there was no corporate existence after 1920 (its charter expired in 1920 by limitation) whose life could be extended. The court's decision is based upon the acceptance of this proposition. It held that since the attempted reorganization in 1916 was void, the district ceased to have legal existence in 1920 by reason of the 20 year limitation contained in its charter, and the life of the district could not be extended because there was no district in existence whose life could be continued. The court held that the district ceased to exist in 1920 and the landowners within the district were in the same situation as if there never had been a drainage district and they could not organize a new district by attempting to comply with the reorganization statutes then in existence. The reasoning of the court is all founded upon the premise that the district ceased to exist on the expiration of the time limitation contained in its charter. Whether this contention was conceded by the defendants or not, it was necessary for the court to reach this result before it could proceed to the specific conclusion enunciated.

We, therefore, conclude in the case at bar that Levee District No. Two of Howard County, Missouri, ceased to exist as a public corporation on January 11, 1960, by reason of the limitation contained in its articles of association that it exist for a period of 50 years. It follows that from and after such date, there was no levee district and the action of those who continued the functions of such district was without any statutory authority. As a consequence, the holding of meetings of property owners within the district, the election of officers, the levying and collection of levee district taxes and the expenditure of monies derived therefrom were without legal authority. We, therefore, affirm that part of the trial court's order by which the defendants were "enjoined and restrained from operating Levee District Number Two of Howard County, Missouri, as a public corporation and attempting to exercise any powers or authority granted by the laws of the State of Missouri to supervisors of such levee district and particularly the levying and receiving taxes on lands within the boundaries of the District for the year 1969." We further affirm that part of the order of the trial court enjoining the county collector from collecting taxes purportedly levied by the district.

We point out that this conclusion and what we have said in arriving at such conclusion is not necessarily applicable to a situation where an attempt is made to use the corporate demise as a defense to a

cause of action based on an obligation incurred in the name of the corporation. Other questions, such as estoppel, etc., might well be involved in such cases and no such questions have been raised in the case at bar. See 1 McQuillin, Municipal Corporations, Third Edition, Section 3.50 and cases heretofore cited.

■ A different question is presented as to that part of the trial court's order which mandatorily required the defendants and each of them "acting as the Board of Supervisors of Levee District Number Two of Howard County, Missouri," to "liquidate the said Levee District as a public corporation, pay all properly due and legally enforceable obligations thereof and any excess remaining shall be divided among all the owners of land in the District in the proportion in which the same were assessed and paid on the lands owned by each and paid to said owners." Defendants, on this appeal, complain that they have no legal authority to comply with this requirement. It does not appear that any of the defendants was a supervisor of the levee district on January 11, 1960, when its corporate existence came to an end. It appears that the district continued to hold meetings and elected supervisors after its legal existence ceased. Defendant Edward L. Gross was the only defendant who testified. He stated that he had been a member of the board of supervisors "from 1961". It would thus appear that he was not a supervisor of the district on the date its legal existence terminated on January 11, 1960. The record is devoid of any evidence as to when the other defendants were elected to the position of supervisors. Without any evidence, we cannot assume that any of these defendants were supervisors at the time the district ceased to exist. Therefore, there is no evidence that any of them have any legal standing, as trustees or otherwise. Even if we were to argue by analogy from the provisions of Section 351.525, supra, (which is by its terms applicable only to business and private corporations) and on the authority of the cases heretofore cited, that the surviving members of the last board of supervisors were constituted trustees for the purpose of winding up the affairs of the district, we cannot say that the present defendants are such trustees. The record does not disclose whether any of the supervisors in office on the demise of the district is presently alive. In Diekroeger v. Jones, 235 Mo.App. 1117, 151 S.W.2d 691, supra, and State ex rel. Walker v. Big Medicine Drainage Dist. No. 1 of Sullivan and Grundy Counties, 355 Mo. 412, 196 S. W.2d 254, supra, the court required the surviving members of the board of supervisors in office when the district ceased to exist, to perform duties as trustees in fulfilling the obligations of the district. These cases do not furnish authority for requiring these defendants, who do not appear to have been supervisors at the time the district ceased to exist, and who might thus have become trustees, to perform the duties of trustees. Such is the effect of the above mandatory portion of the trial court's order. For these reasons, we conclude that this portion of the judgment is beyond the authority of the trial court.

This does not mean that the affairs of the district shall be left suspended in midair for all time to come. It is pointed out in 2 McQuillin, Municipal Corporations, Third Edition (1966 Revised Volume), Section 8.15, page 577, that in the absence of any statutory provision (and none exists in Missouri), a court of equity will administer the affairs of a defunct corporation for the benefit of its creditors and stockholders. Here, the landowners stand in the same position as the stockholders of a private corporation. McQuillin says:

"Under the ancient English common law, in the event of the dissolution or civil death of a corporation, its personal property vests in the king, all its real estate remaining unsold reverts to the original grantor or his heirs, and the debts due to and from the extinct corpo-

ration are wiped out. But the rule to its fullest extent was never adopted in this country, at least so far as the extinguishment of debts was concerned. Neither our courts, nor legislatures have favored it. * * * (M)ost of our courts have so often repudiated this odious rule, that now it is believed to be entirely obsolete. By virtue of the clauses in the federal and state constitutions forbidding the impairment of the obligations of contracts, either directly or indirectly, by legislative act or otherwise, all contracts by virtue of the force of organic law, survive the dissolution, and creditors may enforce their claims in any mode permitted by law. It has been said that neither a private nor a public corporation can avoid payment of its legal obligations by permitting its charter to expire or to be forfeited.

"Sometimes by virtue of express constitutional provisions, statutes commonly provide for the satisfaction of debts, the enforcement of contract obligations, and the winding up of the affairs of the dissolved corporation. * * * (I)n the absence of statute, or in supplementation thereof, according to the just rule of the modern adjudications, both federal and state, a court of equity will now lay hold of the property of the extinct corporation, and administer it for the benefit of its creditors and stockholders. All contracts made while the corporation was in existence survive the dissolution and may be enforced in equity, so far as to subject, for their satisfaction, any property possessed by the corporation at the time. In the view of equity, the property constitutes a trust fund, pledged to the payment of the debts of creditors and stockholders. This well-settled rule, relating to private corporations, applies with like force to municipal corporations: 'If a municipal corporation,' declares the Supreme Court of the United States, 'upon the surrender, or extinction in other ways, of its charter, is possessed of any property, a court of equity will equally take possession of it for the benefit of the creditors of the corporation.'

The protection of these rules extends generally speaking not only to claims or debts resting on contracts, but also to other lawful claims and obligations whatever their nature or character. * * *"

This doctrine received the approval of this court in Diekroeger v. Jones, 235 Mo.App. 1117, 151 S.W.2d 691, supra.

This result is particularly appropriate in this case because it does not appear from the record what the assets of the district may be or what its obligations may be. It was stipulated that there are no district bonds outstanding and the evidence disclosed that at the time of trial, the district had more than $1,000.00 on deposit in a bank and owned some type of a mowing machine. Nothing more appears in the record as to the assets and liabilities of the district. Since there are no statutes providing for the disposition of the public works constructed by the district, many and varied legal questions can be foreseen and the guidance of a court of equity would be beneficial, if not indispensable, in the liquidation of the affairs of the district.

It, therefore, follows that so much of the order of the trial court as reads:

"It is now therefore ordered and adjudged on Count I of the petition that the defendants Edward L. Gross, William Wittmeyer, Martin Wilmsmeyer and Wesley Hoecker acting as the Board of Supervisors of Levee District Number Two of Howard County, Missouri be and they are hereby enjoined and restrained from operating Levee District Number Two of Howard County, Missouri, as a public corporation and attempting to exercise any powers or authority granted by the laws of the State

of Missouri to supervisors of such levee district and particularly the levying and receiving taxes on lands within the boundaries of the District for the year 1969.

\*   \*   \*   \*   \*   \*

"It is further ordered and adjudged on Count II of the petition that the defendant James L. Agnew, Collector of Revenue of Howard County, Missouri, and all agents and employees acting under the direction and authority of the defendant James L. Agnew, be and they are hereby enjoined and restrained from collecting any taxes from plaintiffs and any property owner of lands within the boundaries of Levee District Number Two of Howard County, Missouri levied by the acting Board of Supervisors on behalf of Levee District Number Two of Howard County, Missouri for the year 1969 and from collecting any 1968 taxes levied by said District on lands of plaintiffs which are unpaid at this time."

is affirmed and that paragraph reading:

"It is further ordered and adjudged that Defendants Edward L. Gross, William Wittmeyer, Martin Wilmsmeyer and Wesley Hoecker, and each of them acting as the Board of Supervisors of Levee District Number Two of Howard County, Missouri, are ordered and directed to liquidate the said Levee District as a public corporation, pay all properly due and legally enforceable obligations thereof and any excess remaining shall be divided among all the owners of land in the District in the proportion in which the same were assessed and paid on the lands owned by each and paid to said owners."

is reversed. The costs of this appeal are divided equally between appellants and respondents.

All concur.

residential property, and any infirmities in her testimony bore only upon its weight.