## NANNIE E. FLYNN, Appellant, v. JOHN TATE.

### Division One, March 5, 1921.

1. **SUIT TO DETERMINE TITLE**: Service by Publication: In Partition: Misnomer. In a partition suit a decree of partition and sale based on service by publication is void as to a non-resident defendant who is proceeded against in the petition and order of publication by a surname other than his true name; and a sale under such a decree vests no title in an innocent purchaser without notice.

2. ————: ————: ————: Nannie Flynn for Nannie Morgan. Plaintiff's maiden name was Nannie Martin. She married a man named Morgan. He died and she afterwards married a man named Flynn and was living with him in Oklahoma, when a suit was begun against her under the name of Nannie Morgan for partition and sale of land in which she had an undivided interest. Service was by publication against her as Nannie Morgan and based thereon was a decree of partition and sale. *Held*, the decree was void as to her.

Appeal from Clinton Circuit Court.—*Hon. Alonzo D. Burnes*, Judge.

REVERSED AND REMANDED.

*F. B. Klepper* and *W. S. Herndon* for appellant.

(1) An examination of the pleadings in this case will show that the only issue was, whether or not the respondent obtained the interest of appellant, in the lands described in the petition, in the partition suit of Mary E. Lay and William A. Martin v. Nora Scott and Nannie Morgan, or the unknown heirs of Nannie Morgan. The trial court held as the basis of its order dismissing the plaintiff's suit, that the evidence introduced by the plaintiff showed no title in her. The plaintiff did not attempt to show a clear title from the Government down, but she did show a common source of title in her ancestor, Hen-

derson Martin.    In addition to this the pleadings show that each party claims from the same common source. This was sufficient.    Riley v. O'Kelly, 250 Mo. 857; Machine Works v. Bowers, 200 Mo. 235; Charles v. Whilte, 214 Mo. 211; Maynor v. Land & Timber Co., 236 Mo. 728; Toler v. Edwards, 249 Mo. 162.    (2) The decree in the partition suit of Mary E. Lay and William A. Martin v. Nora Scott and Nannie Morgan, or the unknown heirs of Nannie Morgan, was void.    The undisputed proof shows that at the time the suit was filed, and for twelve years prior thereto, the appellant's name was Nannie E. Flynn.    The copy of the order published was against Nora Scott and Nannie Morgan.    Service by publication against "Nannie Morgan" is not service against Nannie Flynn; and gave the court no jurisdiction.    Ohlman v. Saw Mill Co., 222 Mo. 62; Freemar v. Hawkins, 77 Tex. 498, 19 Am. St. 769.    The case of Schnitger v. Rankin, 192 Mo. 35, relied upon by the respondent in the court below, has no application in this case for the reason the judgment in the Schnitger-Rankin case was in a tax suit and the statutes provided for tax suits to be brought against the record owner.    (3) There is no allegation in the petition which will support the decree, to the effect that Mary E. Lay, William A. Martin and Nora Scott were the only heirs at law of Nannie Morgan, or to adjudge the said Nannie Morgan to be dead on account of none of her people having heard from her for eighteen years. (a) "A judgment by default on proof of publication must rest for its validity on the petition as it was when the order of publication was made."    Cooper v. Guenther, 215 Mo. 564-5.    (b) "A petition is as much a part of the record in this case as the judgment and if the judgment rendered is not authorized by the allegations of the petition, it is of course erroneous."    St. Louis v. Wright Contracting Co., 210 Mo. 499.    (c) There was personal service in the Wright case.    Had there been only service by publication, the judgment would have been void.    The petition must fair-

ly justify and support the judgment rendered. Webb v. Carter, 121 Mo. App. 154; Black v. Early, 208 Mo. 313; Rush v. Brown, 101 Mo. 586; Jackson v. Rush, 87 Mo. App. 238; Sec. 2100, R. S. 1909; Phillips v. Broughten, 193 S. W. 593. (4) A sale in partition is a judicial sale and the rule of *caveat emptor* applies, and in no event can the purchaser acquire anything except the title which the parties themselves had. In the case at bar, the respondent could only acquire the title of those against whom there was a valid judgment. Smoot v. Judd, 161 Mo. 691; Pentz v. Keuster, 41 Mo. 447; Cashion v. Faina, 47 Mo. 133; Stevens v. Ellis, 65 Mo. 456; Hart v. Steedman, 98 Mo. 452.

*Daniel H. Frost* and *E. C. Hall* for respondents.

(1) The appellant was made a party to the partition suit and the publication against her was sufficient to bring her into court for all purposes so far as the partition of that tract of land was concerned. Schnitzger v. Rankin, 192 Mo. 35. (a) There is absolutely no proof that Nannie Morgan was married to Flynn at the date of this partition suit in 1915, and even if she was, she was one and the same person as Nannie Morgan. If this be not the correct construction, then no suit could ever be brought and proceeded with to judgment against female defendants absent from the State, especially when their whereabouts are unknown. She was as well notified by her name of Nannie Morgan as by that of Nannie Flynn, even if she was married to Flynn at the date of the partition suit, which the evidence does not show. Howard v. Brown, 197 Mo. 47. (b) The use of a name is to designate the individual of whom we speak, so as to distinguish him from some other person. Ohlmann v. Sawmill Co., 222 Mo. 66; In re Jones Estate, 27 Pa. St. 338. (2) The order of publication gives the title of the cause and sets forth the names of the brother, mother, sister of this re-

Flynn v. Tate.

spondent, and her own name as she was known to everybody who knew her in Missouri. She knew Nannie Morgan was the name she went under for many years, she knew that W. A. Martin was her brother, that Nora Scott was her sister and that Mary E. Lay was her mother, and her deposition shows that she knew where they lived and that Nora Scott was a non-resident of Missouri, just as the order of publication shows. It shows her own family group and shows by evidence to her which is unmistakable that she is the very identical person designated in that order of publication. Howard v. Brown, 197 Mo. 47. (3) The judgment in the partition suit was regular on its face and could not be collaterally attacked except for errors shown by its own record and cannot be impeached by matters *in pais.* Reed Bros. v. Nicholson, 158 Mo. 624; Abington v. Townsend, 271 Mo. 615; State v. Wear, 145 Mo. 162. (4) Appellant makes the point that there was no allegation in the original petition to justify that portion of the judgment vesting the interest of the appellant in her mother and brothers and sisters. Even if that be the case that would not affect respondent's title, which rests on that part of the decree ordering the land sold for division and partition, upon which appellant makes no attack. (5) There was no proof of title in the plaintiff, and if plaintiff has no title it is no concern of hers what defendant may have or claim. Wheeler v. Land Co., 193 Mo. 279.

BROWN, C.—The petition was filed in the Clinton Circuit Court July 23, 1918, and states, in substance, that the plaintiff is the owner of an undivided one-sixth of thirty-three acres of land in that county, which it particularly describes; that the defendant is the owner of the undivided five-sixths, and is in possession claiming the entire title; that his adverse claim of her undivided one-sixth is based on a pretended decree of that court rendered at the September term thereof, 1915, in a par-

tition proceeding entitled Mary E. Lay and W. A. Martin, plaintiffs, v. Nora Scott and Nannie Morgan, defendants. The prayer is that the court ascertain and determine the estate, title and interest of the plaintiff and defendant respectively in such real estate, and define and adjudge the title and estate of the plaintiff and defendant severally in and to the same, and for general relief.

The defendant answered by general denial, and also "that in a certain cause pending in the Circuit Court of Clinton County, Missouri, entitled Mary E. Lay and William Martin, plaintiffs, v. Nora Scott and Nannie Morgan, defendants, for partition and sale of the real estate described in the petition, a decree was entered ascertaining the rights and interests of the parties therein and by its said decree did find and determine that the said Nannie Morgan had disappeared from his home in Clinton County, Missouri, and had gone out of the State and had not been heard from for a period of fifteen years, ordered that the interests of plaintiff in said real estate be ordered sold and distributed among the other heirs of said estate set forth in said petition."

It further pleaded that the court had jurisdiction of the subject-matter and parties to said cause; that the decree was valid against plaintiff and all other parties thereto and that in pursuance thereof the land was sold by order of the said court to the defendant who paid the full amount of the purchase price and received a deed therefor. That he purchased in good faith not being aware that plaintiff had ever changed her name to Nannie Flynn, if she had so changed it.

The reply was a general denial. Upon trial the court found that plaintiff had no title to the land and dismissed the petition. The plaintiff thereupon after the usual motions filed and determined perfected this appeal.

Plaintiff introduced in evidence the original petition filed in said court July 21, 1915, entitled Mary E. Lay and W. A. Martin, plaintiffs, v. Nannie Morgan and

Nora Scott or the unknown heirs of Nannie Morgan, defendants.

It stated, in substance, that Henderson Martin died intestate on the —— day of ————, 188 ——, the owner in fee of 55 acres of land in Clinton County, including the 33 acres in question, leaving his widow Mary E. Henderson, now Mary E. Lay, his sons William A. Martin and Andy Martin and his daughters, Nannie Morgan and Nora Scott his heirs at law.

That on the —— day of ————, 188 ——, the said heirs at law agreed among themselves upon a parol partition of said land by which each party was to receive eleven acres and entered into possession of the several parts so allotted; that afterward on the 29th day of October, 1885, the said Nannie Morgan conveyed her interest therein to John Miles, who in January, 1893, conveyed it to William A. Martin, who on the 21st day of January, 1893, joined with Mary E. Lay, Nora Scott and Andy Martin, conveyed the shares set off to Nannie Morgan and William A. Martin by said parol agreement to one Josiah Stoutimore; that William A. Martin and Nannie Morgan failed to deed their interest in the 33 acre tract to Mary E. Lay, Nora Scott and Andy Martin as per the parcel agreement; that Andy Martin purchased from Nora Scott the 11 acres set out to her and that the plaintiffs Mary E. Lay and Andy Martin had been in possession of said 33 acres for thirty years and that Josiah Stoutimore and the grantees of heirs had been in possession of the 22 acres belonging to Nannie Morgan and William A. Martin for more than 25 years. This petition further stated that Andy Martin died intestate on the —— day of ————, 1915, the owner of an undivided two-thirds interest in the 33 acres here in question while the plaintiff was the owner of the other one-third interest; that the said Andy Martin left as his only heirs at law Mary E. Lay and defendant William A. Martin and the defendants Nannie Morgan and Nora Scott.

It further stated that the defendants Nannie Morgan and Nora Scott were non-residents of the State of Missouri and due process of law could not be served upon *him* and asked for an order of publication for said non-resident defendants. It concluded with the usual statement that a division could not be made in kind and asked an order of sale and was verified by one of the attorneys who signed it, "to the best of his knowledge and belief."

Upon this an order of publication was issued stating as ground therefor the allegation of the petition "that the defendants are non-residents of the State of Missouri."

No appearance having been made by the defendants, a default decree was entered upon the finding that Henderson Martin died intestate on the ―― day of ―――, 188 ――, the owner in fee simple of the land in controversy which is fully described. "That he left as his only heirs at law his widow, Mary E. Henderson, and W. A. Martin, Andy Martin, Nannie Morgan and Nora Scott and that soon after the death of said Henderson Martin, the said Mary E. Martin and his said other heirs at law agreed on a parol partition of said land and that each one took an equal share, to-wit, 11 acres; and each at once entered into possession of their respective tracts as agreed upon; and the court hereby confirms said parol partition of said 55 acre tract of land further described as aforesaid. The court further finds that the said Mary E. Lay, W. A. Martin, Nora Scott, and the unknown heirs of Nannie Morgan were and are tenants in common and owners in fee of the following described real estate, situate, lying and being in the County of Clinton and State of Missouri, to-wit: All of the East half of the Northwest quarter of the Southeast quarter and 13 acres off the west side of the Northeast quarter of the Southeast quarter of Section Nine (9) in Township fifty-four (54) of Range Thirty-two (32) in Clinton County, Missouri; the court fur-

ther finds that the defendant Nannie Morgan has not
been heard from by any of her people or kind for over
18 years and decrees that her interest in said lands
be divided among her heirs at law, her mother, Mary
E. Lay, W. A. Martin and Nora Scott. The court fur-
ther finds that the plaintiff Mary E. Lay is the own-
er of a five-ninths undivided interest in said land; that
the plaintiff W. A. Martin and the defendant Nora Scott
are each entitled to a two-ninths undivided interest in
said land.

A sale was ordered in accordance with the prayer
of the petition.

No attempt was made to question the facts in evi-
dence. Mrs. Flynn was born on the farm in question
about 1864. Her father died when she was about six-
teen years old and on October 12, 1884, when she was
twenty she married Morgan. Two years afterward she
and her husband went to Cherokee Nation, where they
lived a few months, then to Culbert County, Arkansas,
where they lived about a year and went back to Chero-
kee Nation, where her husband died. She afterward
married John Flynn, with whom she had since lived
twelve years at Blanchard, Oklahoma. She corresponded
with her mother and kept her informed as to her where-
abouts during her life and afterward wrote letters to
her which were not answered. She had no informa-
tion of any proceeding in court until the county clerk
wrote her on July 26, 1917, and never received any-
thing from the estate of her mother or deceased brother.
When Andy died he left surviving him as his heirs his
mother, his brother William, his sister Verona Scott
and herself. When her mother died she left as her
heirs the three last named.

The court held there was nothing in the evidence
showing title in the plaintiff, and dismissed the petition
with costs.

The general object of this suit is to recover an un-
divided one-sixth interest in thirty-three acres of land

in Clinton County, against the defendant who is alleged
to be in possession claiming under a void
judicial sale in partition. The validity and
effect of this sale is the only question in-
volved.

Publication:
Misnomer:
Decree Void.

One Martin is the common source of title. He died
about 1880, leaving a widow, Mary E. Martin, two sons
William and Andy and two daughters, Verona who mar-
ried one Scott and is known as Nora Scott, and Nannie
Morgan, who married Morgan in 1884. He afterward
died and she married John Flynn, with whom she lived
at Blanchard, Oklahoma, for about twelve years before
the institution of this suit. Soon after the death of
the elder Martin, his widow, Mary, married one Lay.
No children were born to them.

The record of the partition suit upon which the de-
fendant depends to establish his title shows that Andy
Martin died at an unnamed date in 1915, leaving his
mother, his brother William and his two sisters as his
only heirs, and seized of an undivided two-thirds of the
land, and that this plaintiff thereby became seized of
the undivided one-sixth which she claims in this suit.
The mother and brother instituted the petition suit on
July 21 of the same year against the two sisters, Mrs.
Flynn and Mrs. Scott, who were both alleged in the
petition to be non-residents of the State. Nothing is
said about the death or disappearance of either, but it
is entitled against "Nannie Morgan and Nora Scott or
the unknown heirs of Nannie Morgan." It is upon this
title alone that the decree of distribution to plaintiffs
as heirs of Mrs. Flynn is founded.

We have repeated so much of our statement in this
connection to show the purpose for which the process
of the law was invoked in that suit, and the promptness
with which it occurred to the living upon the death of
the son and brother to secure to themselves without
compensation the interest of the absent and unsuspect-
ing sisters. These are important elements in the inter-

pretation of the statute upon which they rely for the accomplishment of their purpose.

The honest intent of the Legislature will be presumed. It will therefor be presumed that in suits involving the property rights of non-residents of the State the substitution of notice by publication in a newspaper of the State in which the proceeding is instituted is intended to be of such a character as to bring home to the defendant a knowledge of that fact through the avenues by which such information usually reaches the person for whom it is intended. Should it be published in the Latin language proof that the defendant read that language with fluency would not cure the omission to publish it in the language which the law prescribes, because it is used and understood by his countrymen, and especially by friends and neighbors who might see it and bring it to his attention. This publicity is its very essence, and it is presumed to reach him because it is open to all alike and every member of the public may be the instrument of its communication to the person for whose information it is designed. This is peculiarly applicable to the facts of this case. Mrs. Flynn at the time that suit was instituted and the public notice given, resided in Blanchard, Oklahoma, with her husband. It made no difference in that community what had been the name of a former husband with whom she had lived and whose name she had borne years before, in Plattsburg, Missouri. The name of her husband was her name, and nothing but a desire for concealment could be inferred from the method employed to notify her.

This concealment runs like a thread through the proceeding.

The petition which states her non-residence in Missouri and refers to her unknown heirs, was verified under oath. Neither her mother nor her brother, members of her own family, which will be presumed until the contrary appears to have known her name and residence, made oath to it but it was verified by their lawyer upon

information and belief. Mrs. Flynn stated on oath in this case that she had corresponded with her mother up to the time of her death, yet no one acquainted with the facts or family has explained their ignorance. Although there was no allegation in the petition that Mrs. Flynn was dead, the mother and brother took a decree as her heirs.

We have noticed these circumstances simply to illustrate the purposes for which this class of service may be used. It is frankly admitted that this plaintiff was the owner of one-sixth interest which she had just inherited from her deceased brother, and it goes without saying that the proceeding was promptly instituted for the sole purpose of stripping her of it without compensation or right, but simply by cold manipulation of legal process intended to supply a remedy to deserving litigants. As this court said in Stanton v. Thompson, 234 Mo. l. c. 11: "The service of process by newspaper publication is allowed as of necessity. It is due process of law more in form than substance. However convenient, it is a harsh and highly technical substitute for service of process; therefore, is *strictissimi juris,* and (being of rigid right) a party invoking it is entitled to cold law—no less, no more. [Parker v. Burton, 172 Mo. l. c. 91, et seq; Morrison v. Turnbaugh, 192 Mo. l. c. 446; Davis v. Montgomery, 205 Mo. l. c. 283, et seq.; Ohlmann v. Sawmill Co., 222 Mo. l. c. 67 et seq. and cases cited.]" The law requires it to be given to the non-resident defendant by his own name, and not otherwise, and the failure to do so renders it void. The Legislature has gone to the brink of its constitutional right in authorizing the property of the individual to be taken, whether wrongfully or rightfully, by its use, and the courts can go no further. As this court said in Ohlmann v. Sawmill Co., 222 Mo. 62, in considering a variance of name in the published notice not merely so striking as this: "The question goes to jurisdiction and due process of law. No man may judicially lose his property without his day in

court. A day in court proceeds on notice. So, due process of law and jurisdiction depend on notice.''

In Corrigan v. Schmidt, 126 Mo. 304, the omission of the initial letter of the middle name of the defendant in the publication of notice was held to avoid the judgment. In Burge v. Burge, 94 Mo. App. 15, the court held that Emma was not identical with Emily for the purpose of notice by publication. This is the first case we can recall in which the substitution of an entirely dissimilar name for the true name of the defendant has ever been brought before a court for consideration.

We are cited by the respondent to White v. Lumber Company, 240 Mo. 13, l. c. 27, as holding a different doctrine. On the contrary it expressly approves the cases we have cited, and presents the case in hand as follows: ''In the case at bar we have a new question, viz.: When the grantee takes a deed by his initials, three in number, will a suit by substituted service against him be good, when a mistake is made in the middle initial? As applied to this case, the question is, will a judgment upon substituted service for taxes against O. N. P. Williams, be good against O. H. P. Williams, who is the true owner?'' The court held that by the deed the defendant had adopted the initial ''O'' as his first name although it might in fact have been Oliver, and that the first name being correctly stated in the notice it was not avoided by a mistake in the middle initial. However correct and convincing this reasoning may be it certainly has no application upon principle to the case before us. It does not go to the length of holding, as we are now asked to hold, that notice by publication may be directed against a married woman by the name of any husband she may have previously had. It requires further legislation to bring about this result.

In view of the conclusion stated, it is unnecessary to notice another question suggested by this record, viz: Can a plaintiff sue a defendant as a living person, and, without any pleading, original or amendatory to that

286 Mo.—30

effect, recover on the ground that defendant died before the institution of the suit, leaving the plaintiff as his only heir. The puzzle becomes still more unique when we attempt to substitute the plaintiffs as *unknown* heirs.

The title of the plaintiff to an undivided one-sixth of the land described being admitted by the record, the judgment of the Circuit Court for Clinton County is reversed, and the cause remanded for proceedings in accordance with this opinion. *Ragland* and *Small, CC.,* concur.

PER CURIAM:—The foregoing opinion of Brown, C., is adopted as the opinion of the court. All of the judges concur.