In Re Petition and Articles of Association for Reorganization of Squaw Creek Drainage District No. 1, M. D. Cameron et al., Respondents v. H. L. Rayl et al., Appellants.*

Kansas City Court of Appeals. November 8, 1926.

---

*Corpus Juris-Cyc References: Drains, 19CJ, section 31, p. 625, n. 93; Notice, 46CJ, section 76, p. 561, n. 75; Statutes, 36Cyc, p. 1128, n. 58.

*W. H. Richards* and *A. M. Tibbels* for respondent.

*Culver, Phillip & Voorhees* for appellant.

BLAND, J.—This is an appeal from a judgment purporting to reorganize Squaw Creek Drainage District No. 1 and extending its charter for a period of fifty years from May 22, 1920, under the provisions of the Act of March 24, 1913, concerning drains and levies. [Laws of 1913, p. 232.] The district was originally incorporated on May 22, 1900, for a period of twenty years under sections 6517-6530, both inclusive, Revised Statutes 1889, and amendments thereto. The charter therefore expired on May 22, 1920, and as this proceeding was started on May 18, 1926, it is claimed by the appellants, who are owners of property within the district, that there was no corporation which could be extended by the present proceeding and therefore the judgment was erroneous.

On July 5, 1916, the district by its board of supervisors filed a petition in the circuit court of Holt county, which respondents contend extended the life of the corporation for fifty years from May 22, 1920. The judgment rendered in that proceeding purports to do this but appellants claim that the judgment was void and therefore there was no corporation in existence to be recognized at the time the present proceeding was instituted. It seems to be conceded by the respondent that if the judgment growing out of the proceeding begun July 5, 1916, was void, then there was no corporation in existence at the time the present proceeding was started and that this question may be determined in a case of this character. A number of points are made by appellant in their attack on the proceeding begun in July, 1916, but we need mention but one of such points for the reason that we think that this one is well taken and renders said proceeding and judgment void.

There was no personal service of summons upon the property owners but it was sought to bring them into court by publication of a notice in a newspaper. Appellants' attack on this notice can best be expressed in their own language, as follows: It is claimed that this publication merely gave notice that—

". . . the *drainage district and its supervisors* had filed a petition to *nullify the original decree of incorporation and reincorporate the district with extended life and boundaries under the Act of*

*1913* and make the *new* organization responsible for the debts of the *old* as required by the Act of 1913 when an existing corporation was reorganized under the provisions of that act. Evidently that is what the supervisors wanted to do and *thought* they were doing; and therefore that is what they notified the interested parties they were going to do. Believing they were reincorporated under the Act of 1913, as already stated, they levied a tax that only a 1913 corporation could levy. They sought to maintain the validity of that tax upon the contention that the proceedings were a reorganization of the district under the law of 1913. None of the interested property owners had any notice that what the petitioners asked the court to do, or what the court would do, was simply *to extend the corporate life* of an *existing* corporation. Therefore, the decree that was rendered, was rendered *without any notice* and the decree is void.''

The statute of 1913 provides not only for the extension of the charter of an existing district (see section 46 of the act) but for the reorganization of the district or reincorporation under that act. By an examination of the act it will be seen that the two proceedings are different. It was the purpose of count one of the petition in the proceeding commenced in 1916 to either obtain an extension of the existing corporation or to reorganize the same under the Act of 1913, we are unable to discern which from a reading of the petition. Count two of the petition sought to have the boundary lines of the district enlarged. The notice to property owners substantially follows the allegations of the petition. The notice on its face does not disclose definitely under which provision of the law the district was proceeding but after reading the various sections concerning the proceeding for the reorganization of the district, especially section 57 concerning the liability of a reorganized district, it would seem that the district was attempting to reorganize and not extend its charter. After these proceedings were had the district sought to levy a tax that only a district incorporated under the Act of 1913 could levy. [See Squaw Creek Drainage District No. 1 v. Hopper, 213 Mo. App. 27.] The notice to the property owners stated that pursuant to an election the board of supervisors on behalf of the district had filed a petition in the circuit court of Holt county—

''. . . asking for the extension of the *corporation* (corporate) *existence* of said drainage district, and also asking for the extension of the boundary lines of said drainage district, so that the boundary lines of said district when so *reincorporated* and the boundary lines extended, as prayed for in said petition, the foregoing lands and other property will be formed into a drainage district.'' . . . that the lands and other property as above described will be affected by the *reincorporation and formation of said drainage district* and be rendered liable to taxation for the purpose of paying the expenses

914

of *extending the corporate existence* of said district, *reincorporating* the same, . . .

"That said petition prays for an *order, judgment and decree of this court, avoiding and holding for naught the decree so entered as aforesaid incorporating the Squaw Creek Drainage District No. 1,* and that the court by its decree, order and judgment *extend the corporate existence* of said drainage district for a period of fifty (50) years, *by reincorporating* the same; that when the time for which said drainage district *is extended* and the same *reincorporated,* no indebtedness, liability or contract incurred by the *old organization* shall be in any way invalidated, but that all and every such indebtedness, liability and contract for which the *old organization* was liable shall attach to and become a part of the *new,* and for the further order, judgment and decree of this court extending the boundary lines of said district, . . .

"You and each of you are hereby notified to be and appear at the next term of this court to be held on Monday, October 23, 1916, at Oregon, in Holt county, Missouri, it being the first day of said term of court, and show cause if any there be, why the *corporate existence* of said drainage district should not *be extended,* and the boundary lines of said drainage district changed and extended as set forth and prayed for in the petition filed, and why the same shall not be *extended and organized as a public corporation* of the State of Missouri, otherwise the prayer of said petition may be granted.'' (Italics ours.)

A property owner reading this notice could not get any definite understanding as to what the nature of the proceeding was, whether to extend the life of an existing corporation or to reincorporate or reorganize the district. The notice contains language suitable to either kind of proceeding but it rather suggests that the latter was the purpose of the petition. To say the least, the notice was ambiguous and misleading. The court, as before stated, rendered a judgment purporting to extend the charter of the existing corporation for a period of fifty years from May 22, 1920, and extending the boundaries of the existing corporation with such extended life. Respondents admit that that part of the judgment extending the boundaries was void for the reason that they could not have been extended in a proceeding even of the nature that respondents claim that that proceeding was, but contend that as that part of the judgment is separable from the other, that it does not void the rest of the judgment and that the judgment is a valid one for the purpose of extending the life of the existing corporation.

"Where a statute directs the publication of a notice having reference to personal rights or to property, the requirements of the statute are to be strictly pursued.'' [29 Cyc, 1119.]

In Stanton v. Thompson, 234 Mo. 7, 11, it is said:

". . . service of process by newspaper publication is allowed as of necessity. It is due process of law more in form than substance. However, convenient, it is a harsh and highly technical substitute for service of process; therefore, is *strictissimi juris,* and (being of rigid right) a party invoking it is entitled to cold law—no less, no more." [See, also, Flynn v. Tate, 286 Mo. 454, 464; Winningham v. Trueblood, 149 Mo. 572, 586, 587; Janney v. Spedden, 38 Mo. 395; Robb v. Woodward, 42 Mo. 482, 489; 21 R. C. L., p. 1293.] Under these authorities we must hold that the notice is entirely defective. The property owner on reading the notice would not understand what was intended to be done but, if anything, would be led to believe that the proceeding was for the purpose of reincorporating the old district. It necessarily follows that the judgment purporting to extend the life of the existing corporation was void.

Appellant claims that the district should have proceeded in its present action under the provisions of section 2, *et sequi,* of the act concerning the formation of drainage districts, in view of the fact that there was no district in existence at the time this proceeding was instituted. In answer to this the respondents say that this proceeding and the proceeding under section 2, *et sequi,* of the act for an original organization of such a district, are substantially the same. Appellants say that there is a vital difference in the two in that in a proceeding to reorganize a corporation the landowners are not required to obligate themselves to pay the expenses of organizing and making the improvements (see section 53 of the act) and that the petition in the case at bar shows that the landowners had not obligated themselves for such expenses in the articles of association. Also it was never the intention of the Legislature that section 53 of the act should apply so as to permit the landowners "not within the boundaries of any existing corporation to reorganize a dead corporation."

Respondents refer us to that part of section 4 of the act providing that the court shall dismiss the proceedings and adjudge the costs against the signer of the article of association in proportion to the acreage represented by each in case he finds that the proposed district be not incorporated, and section 11 of the act providing that when the district is organized the supervisors "shall as soon as elected and qualified, levy a uniform tax of not more than fifty cents per acre upon each acre of land within such district, . . . to be used for the purpose of paying expenses incurred or to be incurred in organizing said district, making surveys of the same and assessing benefits and damage and to pay other expenses necessary to be incurred." Respondents contend that these sections apply to a reorganized district and therefore those filing a petition for the reorganization of a district are required to pay the costs of reorganizing a district

whether or not the court adjudged the district should be reorganized. If these sections of the statute cited by the respondents are applicable to the reorganization of an existing district, they are made so merely by reference (see section 55 of the act), the sections relied upon by respondents being in that part of the act relating to the original formation of drainage districts. Section 2 of the act relating to the original formation of districts, provides that the owners of a majority of the acreage in the proposed drainage district, may sign articles of association which, among other things, shall state that they are—

". . . willing to and do obligate themselves to pay the tax or taxes which may be assessed against their respective lands or other property to pay the expense of organizing and of making and maintaining the improvements that may be necessary to effect the reclamation of said lands and other property, so formed into a drainage district, and to drain and to protect the same from the effects of water."

We must give some effect to that portion of the statute last quoted. If the court has the power under section 4 to adjudge the costs against the signers of the articles of association in case the district is not organized, and if it is incorporated the supervisors have the power to levy the taxes mentioned in section 11, without the signers of the articles agreeing therein to pay the expenses and taxes which might be assessed as provided by section 2, then there was no object in the Legislature enacting that part of section 2 that we have quoted. The rules of statutory construction require us to give effect to every provision of the statute if possible. [36 Cyc. 1128, 1129.] Giving effect to that part of section 2 of the act in controversy, we think that it, read together with section 4 and 11, was intended to provide that the court may assess the costs provided in section 4 and that the board of supervisors may make the levy provided in section 11 only where the signers of the articles of association agree that they will pay these costs and expenses. In other words, the signing of the articles of incorporation required by section 2, is jurisdictional. Therefore, there is quite a difference in this respect between reorganizing an existing district and incorporating an entirely new district. Of course the present proceeding cannot be regarded as reorganizing an existing corporation and it cannot be recognized as a proceeding, in substance, to organize an original corporation as articles of incorporation of the character required by section 2 of the act have not been signed. The owners of land within the boundaries of the old district are in exactly the same situation as if there had never been a district; in other words, their land is in the same situation as any other land outside of the boundaries of any organized drainage district and the petitioners cannot form a district without signing articles as provided by section 2, *et sequi*, of the act. We think that

it is quite apparent that it was never the intention of the Legislature to permit landowners not within any drainage district to organize an original corporation by going through the form of reorganizing an expired corporation.

However, respondents insist that there is no right of appeal from a judgment of the kind involved in the case at bar. It may be admitted that ordinarily there is no appeal from a judgment reorganizing a drainage district. [See Drainage District No. 4 v. Railroad, 216 Mo. 709; In re Drainage District; Buschling v. Ackley, 270 Mo. 157; In re Birmingham Drainage District v. Railroad, 274 Mo. 140; State ex rel. v. Dawson, 284 Mo. 490; State ex inf. McAllister v. Norborne Land & Drainage District, 290 Mo. 91, 129, 130.] However, it was held in the case of Buschling v. Ackley, supra, 1. c. 170, 171, in justifying the Supreme Court in Birmingham Drainage District v. Railway, 266 Mo. 60, in assuming jurisdiction in the appeal in that case, that where the drainage act is used to accomplish a purpose foreign to the design of the Legislature, a question of the court's jurisdiction over the land is raised and therefore there is an appeal. It seems to us that what was said in that case applies to the case at bar. Here the drainage act concerning the extension of an existing corporation has been used in an effort to accomplish an object wholly foreign to its purpose, that is, as a substitute for a proceeding to organize an original district; in other words, an attempt has been made to apply a statute enacted for one purpose to a wholly different purpose and one never intended by the Legislature. Under the holding in In re Drainage District; Buschling v. Ackley, supra, we must hold that an appeal lies under the circumstances of this case.

The judgment is reversed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.