IN THE MATTER OF THE DETERMINATION OF SURVIVORSHIP OF DANIEL BERGMAN, DECEASED, CLARA BERGMAN, Petitioner and Appellant,

v.

THE AMERICAN NATIONAL BANK OF CHEYENNE, WYOMING, SPECIAL ADMINISTRATOR OF THE ESTATE OF DANIEL BERGMAN, DECEASED, Objector and Respondent.

(No. 2281; Sept. 5, 1944; 151 P. 2d 360)

356

For the petitioner and appellant there was a brief by Walter Q. Phelan and John C. Pickett, both of Cheyenne, Wyo., and oral argument by Mr. Pickett.

For the objector and respondent there was a brief by Charles E. Lane, W. E. Mullen and Carleton A. Lathrop, all of Cheyenne, Wyo., and oral argument by Mr. Lane and Mr. Lathrop.

358

OPINION

BLUME, Justice.

This is a proceeding instituted by Clara Bergman in the District Court of Laramie County, Wyoming,

entitled "In The Matter of the Determination of Sur-
vivorship of Daniel Bergman, Deceased." The petition
alleges that petitioner and Daniel Bergman, deceased,
were husband and wife; that the deceased died on
the ........ day of April, 1943; that on June 15, 1914, a
deed was executed to certain real estate situated at
316 W. 16th Street, in the City of Cheyenne, Wyo-
ming, being a part of Lot 6, in Block 391, and that the
deed was made to Daniel Bergman, Cheyenne, Wyo-
ming, and his wife, Clara Bergman, of the same place;
that the deed was duly filed of record on July 29,
1914, and was recorded in Book 193 at page 77; that
the deed conveyed an estate by the entirety to the
deceased and the petitioner; that when the deceased
died the estate by the entirety was terminated and
thereupon the petitioner became the owner of the
premises. The petitioner, accordingly, prays that the
court make an order providing for the giving of notice,
as provided by law, of the time and place when the
court will heart the petition; that upon the hearing the
court make and enter a decree adjudging that the de-
ceased and petitioner were the owners of an estate
by the entirety, and that the title to the property
vested solely in the petitioner upon the death of Daniel
Bergman. On April 29, 1943, the court entered an
order to the effect that the deceased died on April 19,
1943, and directed the hearing on the petition to be
had on May 20, 1943, after publishing a copy of the
order once a week for three successive weeks prior
to the hearing. A notice as directed was accordingly
published. On May 19, 1943, the American National
Bank, of Cheyenne, Wyoming, as special administra-
tor, appeared specially in the proceeding and solely
and only for the purpose of objecting to the jurisdic-
tion of the court over any of the persons interested
in the estate or of the subject matter of the proceed-
ing, and it is apparently contended that no deed, such

as claimed by petitioner, was ever executed. The court sustained the objection on May 20, 1943, and dismissed the petition. From this order an appeal has been taken to this Court.

It is claimed that the proceeding herein was instituted in accordance with the provisions of Ch. 69, S. L. of 1939, which is as follows:

"If any person has died, or shall hereafter die, who at the time of death was or is the owner of a life estate which terminated or terminates by reason of the death of such person, or if any person has died or shall hereafter die, who was or is the owner with his or her surviving spouse of an estate by entireties, any person in either case, interested in the property or in the title thereto, in which such estate was or is held, may file in the District Court of the county in which the property is situated a verified petition setting forth such facts and thereupon, after two weeks notice by publication or otherwise, as the court may order, the court shall hear such petition and the evidence offered in support thereof; and if, upon such hearing, it shall appear to the court that such life estate of such deceased person has terminated by reason of such death or that such estate by entireties remains vested solely in the surviving spouse by reason of death, the court shall make a decree to that effect, and thereupon a certified copy of such decree shall be recorded in the office of the county clerk and thereafter shall have the same effect as a final decree of distribution of an estate of a decedent."

The original Act (Section 88-916, Rev. St. 1931) related only to the termination of a life estate and provided that the hearing should be had "after such notice by publication, or otherwise, as the court may order," instead of providing for a definite notice of two weeks as contained in the amendment of the Section. The question herein is whether or not, as contended by counsel for the petitioner, an order upon the hearing of the petition is conclusive as to the own-

ership of the property involved, or whether, as contended by counsel for the objectors, the jurisdiction of the court is confined to the determination of the fact of death of one of the grantees in the deed made to husband and wife. The statute above mentioned was amended apparently after our decision in Peters v. Dona, 49 Wyo. 306, 54 P 2d 817, in which this court held that a deed executed to husband and wife creates an estate by the entireties.

Provisions are made in the statutes of various states in the United States in connection with showing of record the fact that an estate in land has been terminated by the death of one who has an interest therein, including the termination of a life estate, an estate by the entireties, or an estate created by the community-property law. In Colorado the statute provides that a certificate of the death, issued by a public official, may be recorded and that such certificate shall be prima facie evidence of the death of the party interested in real estate. § 40-117 Colo. Ann. Statutes, 1935. In Minnesota the statute provides that the death of a joint tenant or of one who has a life estate in property may be shown upon the records by filing a copy of the certificate of an officer who is required by law to keep a record of the death of persons within the jurisdiction of such officer. Such certificate or the record thereof is made prima facie evidence of the death of such person and the termination of a joint tenancy in and to the property involved. § 600-21, Minnesota Statutes, 1941. Idaho has a statute which is identical with the statute in this State, prior to the amendment of 1939. § 7774 Idaho Compiled Statutes, 1919. The statute in Wisconsin provides that upon the death of a joint tenant, or of one who holds a life estate in property, a petition may be filed in the County Court; that thereupon the court shall enter an

order setting forth the fact of the death of such person and that such order when filed of record shall be prima facie evidence of the facts therein recited. The statute provides for no notice. § 230-47, Wisconsin Statutes, 1943. The statute of Michigan, in that connection, is substantially the same as the statute of Wisconsin. P. 600, Public and Local Acts, Michigan Session Laws, 1939. In 1935 the Legislature of Oklahoma provided that when a person owning a life estate in property dies, a petition may be filed in court and a notice of the hearing thereof be given by posting copies in three public places before the day of hearing, and that upon the hearing the court shall make and enter an order determining the fact of the death of such life tenant and the termination of a life estate in such real propery. Art. 4, p. 7, S. L. of Oklahoma, 1935. In 1939 the Legislature of Utah amended its statute which had theretofore related only to the termination of a life estate by also providing for the termination of a joint tenancy or a tenancy by the entirety. The statute provides that notice shall be given by publication as the court or judge may direct and that upon the hearing the court shall make and enter judgment "establishing the facts of such death and the effect thereof upon the title to and ownership of such property." Ch. 124, S. L. of Utah, 1939. The statute of South Dakota makes elaborate provisions for showing the termination of an estate such as is herein discussed. It provides that notice of the hearing must be given by publication and by mailing, by registered mail, a copy of the notice to the life tenant and to the heirs, or heirs-at-law, of the life tenant, including in that term a person holding an interest as joint tenant. The order of the court is directed to constitute prima facie evidence of the fact of the death of the life tenant, and of other matters set forth in the record. Any person interested may thereafter bring

an action in court questioning the facts set forth in the order, but the order is conclusive in those cases in which no action has been brought within thirty days after the making of the order as against one who has in the meantime bought the property in good faith and for a valuable consideration. §§ 37-1201 to 1209, incl., South Dakota Code of 1939. It is apparent from what has been said that at least in most of the states above mentioned the order of the court in connection with the termination of a life estate, joint estate, or an estate by the entireties, is intended to be prima facie evidence only.

Our original statute was seemingly taken from California. The original legislative act in that State was passed in 1881 (Statutes 1881, page 35) reading exactly as our original act, passed in 1890-1891, and embodied in Section 88-916 Rev. St. 1931. See In Re De Leon's Estate, 102 Cal. 537, 36 P. 864. The California legislative act—embodied as Section 1723 in the Code of Civil Procedure—was amended in 1897 (Statutes 1897, page 62). The amendment merely included in its purview estates other than life estates, and, as amended, provided that if any person should die who was the owner of a life estate, or of a homestead, or of community property which passed upon the death of such person to a surviving husband or wife, any person interested in the property might file a petition, setting forth the facts, and thereupon, after such notice by publication or otherwise, as the court might order, the court should hear the petition and the evidence in support thereof, "and if upon such hearing it shall appear that such life estate of such deceased person absolutely terminated by reason of his death, or such homestead or community property vested in the survivor of such marriage, the court shall make a decree to that effect, and thereupon a

certified copy of such decree may be recorded in the office of the county recorder, and thereafter shall have the same effect as a final decree of distribution so recorded." It has been held in California that the only power conferred upon the court under this statute is to determine the fact of the death of the person who had an interest in the property. Hansen v. Union Savings Bank, 148 Cal. 160, 82 P. 769; King v. Pauly, 159 Cal. 549, 115 P. 210, McPike v. Mehrmann, 18 Cal. App. 501, 123 P. 549 (1912), and see In re Tracey, 136 Cal. 385, 69 P. 20. The statutes of California were amended after the decisions above mentioned, providing that the petition should set forth, among other things, the names of all persons interested in the property that a notice should be served upon the persons so mentioned in the petition in the same manner as a summons, at least ten days before the time set for the hearing; that the judgment in such case should be conclusive upon the persons so served, but as to persons not served the decree should be conclusive only as to the fact of death. Kerr's Cyclopedic Codes of California, 1920, § 1723. The statute was again amended later and now provides only for the posting of notice, and the order entered in such case is prima facie evidence only of the fact of the death of the party alleged in the petition to have died. Probate Code, 1941, § 1170-1175.

The Legislature of this State when it amended our statute did not embody the provisions of the California statutes relating to the same subject, as amended in the manner above mentioned, but adhered substantially to the provisions contained in the original California statute. It had before it the statute contained in the Wyoming Compiled Statutes, 1931, as well as the citations from the California courts, in which it was held that the court in such proceeding has power

only to determine the fact of the death of the person who held a life estate or a similar interest in real property. It would almost seem that the Legislature of this State apparently deliberately adopted the meaning given the section by the California decisions above cited. Counsel for petitioner admits that the legislature had these decisions in mind, but thinks that it meant to evade them by prescribing a notice of two weeks instead of the notice previously described, which was fixed by the court. But the change in that respect is too small to lead to any such conclusion.

Counsel for the petitioner argues that the court in King v. Pauly, supra, expressed a doubt as to the construction that should be put upon the statute. That is true, but the main doubt that arises from reading the decision as a whole is as to whether or not the court would have sustained the statute for any purpose whatever, if its effect had not been limited as it was limited by the court. One of the justices put his opinion expressly upon the ground that if the effect of the statute were not limited as it was, it would be in violation of the constitution, presumably in violation of due process. In fact, that seems to be the thought of the Supreme Court of California as expressed in the majority opinion, for the court said:

"It is not to be supposed that the Legislature contemplated that a conclusive adjudication as to these alleged facts might be made against those claiming under the wife without such notice to them and opportunity to defend as would comply with the requirements of our federal and state Constitutions as to due process of law. Yet section 1723, Code of Civil Procedure, provides that the court may hear the petition and make the decree contemplated by its terms 'after such notice by publication or otherwise, as the court may order.' A publication of a notice in proper form in one issue of a local newspaper on the day before the time fixed for hearing, or a posting of such notice

at the courthouse door one day before the time fixed for hearing, would apparently conform to the requirements of this section, if such was the notice prescribed by the court. We do not believe that it can seriously be claimed that such notice would constitute due process in a proceeding of the character this is claimed by defendants to be, especially as against nonresident defendants. In any action against known defendants, personal service of summons is essential under the statutes of this state whenever it can be had, and publication of summons where personal service cannot be had, and where it is sought to obtain jurisdiction as to a defendant residing out of the state or absent therefrom the publication must not be less than two months. In the light of these statutory requirements as to ordinary actions, it appears almost incredible that the Legislature could have contemplated that a proceeding which in its whole effect and scope would be nothing less than an ordinary action to quiet title could be had and conclusively determined upon such notice to those interested in the property as is authorized by the section. It is much more reasonable to conclude that it merely contemplated a proceeding having for its object, as said in the Hansen Case, the establishment of some record evidence 'of the death of a life tenant, a homestead claimant, or other person upon whose death some right or estate vests."

And that leads us directly to the question as to whether or not, if the statute in controversy is construed as counsel for petitioner does, the provision for notice, provided in our statute, as amended, is such as to constitute due process of law. Proceedings in rem such as admiralty proceedings, eminent domain proceedings, probate proceedings, and some others, which are said to be proceedings in rem strictly so-called, do not require personal notice. In such cases the action or proceeding is said to be against and to affect property only. I Am. Jur. 436. However, an action or proceeding, the aim of which, like an action to quiet title, essentially a proceeding in equity,

is to exclude other parties from any right or title in and to property is not dissimilar. It is generally called quasi in rem. I Am. Jur. 438. It has been stated that a judgment quasi in rem affects not only the title to the res, but likewise rights in and to it possessed by individuals. 1 Am. Jur. 437. But the distinction between an action quasi in rem and one strictly in rem is elusive. See, for instance, the able discussions in Title & Document Restoration Co. v. Kerrigan, 150 Cal. 289, 88 P. 356, 8 L.R.A. (N.S.) 682, 19 Am. S.R. 199; Arndt v. Griggs, 134 U. S. 316, 33 L. Ed. 918, 10 Sup. Ct. 557. After all, no private property, or substantially none, is without an owner, and the rights of *some* person or party are sought to be excluded, diminished or determined in every action or proceeding involving property whether such action or proceeding is strictly in rem or quasi in rem. That is just as true in actions to quiet title, foreclosing a mortgage, to partition property, as it is in admiralty proceedings, in eminent domain proceedings, and in probate proceedings. See Gassert v. Strong, 38 Mont. 18, 98 P. 497; Mack v. Westbrook, 148 Ga. 690, 98 S.E. 339. In Shepherd v. Ware, 46 Minn. 174, the court stated:

"It is conceded that constructive or substituted service may be authorized by the state, and resorted to in all actions or proceedings touching real property which are properly denominated actions or proceedings '*in rem*.' Such are actions to partition real estate, proceedings to enforce the collection of taxes against lands, and for the condemnation of land. Pennoyer v. Neff, 95 U. S. 714, 727. Actions *quia timet* in respect to land, to remove a cloud, or to determine adverse claims, are equitable in their nature, and, strictly speaking, equity acts upon the person, and not upon the property; and in these actions the judgment affects the claim or title to the land, and they are not strictly actions *in rem*. But they concern real estate lying within the jurisdiction of the court, and the state may clothe the court with full power to inquire and

adjudicate as to its *status*, title, and ownership; and it is now well settled that, as respects the procedure provided, and the constructive service of notice by publication upon non-resident defendants, at least, actions of this kind are to be classed with actions in *rem.*"

There can, of course, be no doubt that in some cases personal notice cannot be held to be essential. Courts of the state must have the right to adjudicate the title and status of propery within its borders, and if the parties interested in the property are non-residents of the state, some other form of notice must suffice. 12 Am. Jur. 292, 294. But some of the interested parties may live in the state, and one of the main points herein involved is, as to whether or not personal notice' is necessary as to them. If the test of the sufficiency of notice were as to whether an action affects property only, in which no personal judgment is asked against anyone, or is waived, but only a judgment affecting the property is asked, then, logically, it might be said that little if any difference exists in an action strictly in rem, and one generally called quasi in rem. Then the difference between these two classes might be ignored, and the legislature left free to provide in all such cases for service by publication only, without anything more. But neither courts nor legislatures have so far been willing to dispense with personal notice to residents in *all* actions or proceedings which affect the right to property only. Hence the test proposed cannot be the true one. But another test has frequently been mentioned, namely, that of necessity. Thus it was said in Shepherd v. Ware, supra:

"The legislature may, in its discretion, provide for substituted service in case of necessity, or where personal notice is for any reason impracticable, in an action where the controversy relates to property which is within the jurisdiction of the court; and with a reasonable exercise of such legislative discretion the courts will not assume to interfere."

And in State v. Guilbert, 56 Ohio State Reports 575, 620, 47 N.E. 551, 38 L.R.A. 519, the court said:

"The principle is that the state may provide for the adjudication of all adversary rights of persons in property within its borders, and to the end that such jurisdiction may be complete the legislature may provide a substituted service of process for cases in which actual service cannot be made. In such case nothing more is required by the law of the land than that the substituted service shall be such as, in the exercise of legislative discretion, shall be found most apt to accomplish the purposes of actual service."

In Flynn v. Tate, 286 Mo. 454, 228 S.W. 1070, the court, quoting from other cases stated that, " 'the service of process by newspaper is allowed as of necessity. It is due process of law more in form than in substance. However convenient, it is a harsh and highly technical substitute for service of process'." In 16 C.J.S. 1257, 1258, it is said that, "substituted service is due process of law, however, only where there is some reason or necessity therefor, and where there is no reason why personal cannot be had personal service is necessary to constitute due process even as to property within the jurisdiction of the court, except where the proceeding is purely in rem." In 50 C.J. 496, it is said that service by publication "is limited strictly to cases of necessity and is never permissible where personal service is practicable even, though personal service is difficult to obtain." Authorities from a number of states are cited. In Bardwell v. Collins, 44 Minn. 97, 46 N.W. 315, 20 Am. S.R. 547, 9 L.R.A. 152, an action to foreclose a lien, the court held that the action was one in personam, requiring personal service in those cases in which it might be had. The Court said, among other things:

"What we do mean to assert is that the right to resort to such constructive or substituted service in personal actions proceeding according to the course of the

common law rests upon the necessities of the case, and has always been limited and restricted to cases where personal service could not be made because the defendant was a non-resident, or had absconded, or had concealed himself for the purpose of avoiding service. * * * We think it would be a surprise to the bench and the bar of the country if it should be held that process or summons in ordinary civil actions might be served on resident defendants, present and capable of being found within the jurisdiction of the court, merely by publication in a newspaper. The dangers and abuses that would arise from such a practice are too apparent to require to be named or even suggested. * * * It is, in our judgment, beyond the power of the legislature to disregard so fundamental and long-established a principle of our jurisprudence. Service by publication, under such circumstances, is not 'due proces of law,' and therefore any statute assuming to authorize it is unconstitutional."

In Bear Lake County v. Budge, 9 Idaho 708, 75 P. 614, 108 Am. S.R. 179, the court considered a statute in reference to a proceeding relating to water rights. The statute in that case did not provide for personal service where it might be had. The court stated, among other things:

"It cannot be said that the section under consideration takes great precaution to discover the unnamed defendants residing in the county where the suit is pending. It fails to require the personal service of summons on known defendants residing in such county, and is in conflict with those provisions of our state Constitution, as well as the Constitution of the United States, which provide that no person shall be deprived of life, liberty, or property except by due process of law. Those provisions prohibit the Legislature from dispensing with the personal service of summons when it is practicable. That is required to give courts jurisdiction under the general laws of the state in regard to procedure in suits brought to quiet title or to settle adverse rights. * * * If the power assumed by the Legislature in the provisions of this act in regard to the service of summons be sustained by this court,

it would lead to most fearful results, as it would enable them by special and limited law to settle controversies over titles to private property, and to take the property of one person against his consent and give it to another. * * * We know that requirements less rigid than those above indicated may be found in cases of taxation and eminent domain, but we know of no precedent for such a notice as is provided in said act, where the title to property is directly involved, and the object and purpose of the suit is to quiet titles and settle conflicting private claims to private property."

In the case of McDaniel v. McElvy, 91 Fla. 770, 779, 804, 108 So. 820, 832, 51 A.L.R. 731, a proceeding in the nature of an action to quiet title and remove clouds, the court said, among other things:

"Suits of this nature are not technically suits in *rem*, nor are they strictly speaking *in personam*, but being against the person in respect of the *res*, wherein the decree does not extend beyond the property in controversy, these proceedings acquire a status that may be characterized as suits *quasi in rem*. Title Co. v. Kerrigan, 88 Pac. 356; 8 L.R.A. (N.S.) 352; 21 R.C.L. 1285. The *res*, the subject matter of the controversy, is within the jurisdiction, and it is because of that circumstance that the court is able to adjudicate the defendant's interest in it. In these suits it is not essential that the court have jurisdiction of the *person* of the defendant. Jacob v. Roberts, 223 U. S. 261; 56 L. Ed. 429. Of course, resort to constructive service by publication is predicated upon necessity, and if personal service could be effected by the exercise of reasonable diligence, substituted service is unauthorized. * * * But judgments which exclude persons from any interest in or lien upon land should not be rendered without actual notice, when by the exercise of reasonable diligence actual notice can be given."

In Hunstock v. Estate Development Co., (Cal. App.) 126 P. 2d 932, Affirmed 22 C. 2d 205, the court said:

"But under the requirements of due process it is essential that the court have jurisdiction over the person and that the defendant receive reasonable and

appropriate notice. Milliken v. Meyer, 311 U. S. 457, 61 S. Ct. 339, 85 L. Ed. 278, 132 A.L.R. 1357. It is not only fundamental law but the essence of natural justice that a court may not adjudicate upon the rights or duties of a person unless he is given an opportunity to be heard after the service of process is had upon him or his duly constituted agent, or his waiver thereof in writing or by personal appearance. While under the state or federal constitution there is no provision in express words which requires that initial original process shall be served personally upon the defendant, his agent or the person substituted for him by statute, whether the action is in personam or in rem, nevertheless it is well established that a statute which authorizes substitute or constructive process against a resident who can with proper diligence be served personally is not due process."

In Title & Document Restoration Company v. Kerrigan, supra, the court stated:

"In State ex rel. Monnet v. Guilbert, 56 Ohio St. 575, 38 L.R.A. 519, 60 Am. St. Rep. 756, 47 N.E. 551, the court declared the Ohio 'Torrens law' to be unconstitutional. While there is in the opinion some language which lends apparent support to the contentions of respondent, the fact is that the law there involved did not require personal service of summons or notice even upon resident claimants, whose existence, names, and places of abode were all known to the plaintiff or petitioner. The same defect attached to the statutes which were declared null in Brown v. Levee Comrs. 50 Miss. 471, and Webster v. Reid, 11 How. 437, 13 L. Ed. 761. That, as to such defendants, a service by publication is not sufficient to constitute due process of law, in a proceeding not strictly *in rem,* must be admitted. And in this connection it may be well to notice the contention of respondent that, by the terms of the act now under consideration, the plaintiff in the proposed action may include among 'unknown claimants' those who, with reasonable diligence on his part, might have become known to him. It is no doubt true that so far as substituted service upon a class of unknown claimants is permitted at all, in proceedings

which are merely quasi *in rem,* it rests upon the ground of necessity, and that this necessity will not justify the omission of personal service upon all who could with reasonable diligence be ascertained and found."

To the same effect se McNamara v. Casserly, 61 Minn. 335, 63 N.W. 880; Arnold v. Visenaux, 129 Minn. 270, 152 N.W. 640; Sparks v. Standard Lumber Co., 92 Wash. 584, 159 P. 812; Brown v. Board of Levee Comrs., 50 Miss. 468. See also Hockaday v. Jones, 8 Okla. 156, 159, 56 P. 1054; Curtis v. Hoyt, 192 Iowa 1334, 186 N.W. 460; Estrem v. Slater, 181 Iowa 920, 165 N.W. 263. The test of necessity above mentioned is not absolute. It cannot, for instance, be said that in the ordinary eminent domain proceeding personal notice to residents cannot be given. It has indeed been held in some cases that it is necessary to give such notice. Mulligan v. Smith, 59 Cal. 206; Kundinger v. Saginaw, 59 Mich. 355, 26 N.W. 634; State v. Fond du Lac, 42 Wis. 287; Smith v. Cochrane, 9 Wash. 85, 37 P. 311, 494. And Lewis on Eminent Domain believes that to be the better rule, but most of the cases hold the contrary. Lewis, Eminent Domain, Vol. 2, pp. 1012-1013. The test of necessity, then, as stated, is not absolute, but relative. Along with necessity must be considered what is usually required in similar cases by the decisions of the courts and the legislature. An action to quiet title requires a personal service on residents of this State. It is a proceeding whose aim is similar to the aim of the petition filed in this case, and, therefore, should be taken into consideration herein. Moreover, if what is said by the Missouri Court is correct, that service by publication is a harsh and highly technical substitute for service of process, it would seem that courts should hesitate to permit such substitutes except in cases in which it it clear that fairness and justice is fully satisfied.

We think that the decisions already cited compel us to hold that service by publication in a case in which the rights of parties in property in this State are sought to be excluded, as in the case at bar, is not sufficient as to residents of the State whose whereabouts are known.

The record in this case does not show the residence of parties having an interest in the property adverse to the petitioner other than the American National Bank, which is a resident of this State. For aught that appears, they may all be residents of this State requiring a notice which would reach them in due course, though we need not say that the method of service provided by statute for ordinary cases is the exclusive method which may be provided by statute. See Tyler v. Court of Registration, 175 Mass. 71, 51 L.R.A. 433; Farm Investment Co. v. Carpenter, 9 Wyo. 110, 61 P. 258, 50 L.R.A. 747.

In some cases, as already stated, notice by publication, without more, must necessarily be held sufficient in cases in which the rights of property in this State are sought to be adjudicated. That is true for instance in cases against unknown parties or where the residence of interested parties is unknown. But is a two weeks' notice by publication or posting a reasonable notice to non-residents of this State, in a proceeding such as that before us to exclude them from any interest in property here, when the residence of the parties is known and in which they could be apprised of the proceeding by sending them a copy? There is little authority on the question. Many cases state generally that rights in property in the state may be determined against non-residents, but in most of these cases, it will be found that a copy of the notice has also been mailed to them, or their residence was unknown. See, however, Arndt v. Griggs, 134 U. S. 316, 10 Sup. Ct. 557. It has been held that under some circumstances

publication of notice against non-residents without anything more is sufficient. That was held in a case considered as a proceeding in rem or quasi in rem and in which it might well be presumed that the residence of interested parties was unknown. State v. Security Savings Bank, 180 Cal. 419, 199 P. 791. Affirmed in 263 U. S. 282, 44 Sup. Ct. 108, 66 L. Ed. 301. And see McDaniel v. McElvy, supra. But we can hardly indulge in any presumption in this case that the heirs of Daniel Bergman or their residence is unknown. The notice required is one which is reasonable. 12 Am. Jur. 294, 16 C.J.S. 1255. "Due process of law is satisfied if the notice given is sufficient to make it reasonably probable that the party proceeded against would be apprised of what is going on and given opportunity to defend, and a form of substituted service not adapted to bring home notice to the party to be charged has been held not to be due process." 16 C.J.S. 1259, 12 Am. Jur. 294. After all, the fundamental test, whether or not a notice provided by statute is in conformity with due process, seems to be whether it is fair and just to the parties involved. 12 Am. Jur. 294. Suppose that the legislature should pass a law providing that a decree of divorce may be rendered against a non-resident by publishing or posting a two weeks' notice, without providing that a copy of the notice should be sent to the defendant whose residence is fully known. Would that be fair and just? Would we not be tempted to answer in the negative? In an action of divorce, the court determines the status of persons, and the action is said to be in rem. 1 Am. Jur. 436. See Williams v. North Carolina, 317 U. S. 287, 63 Sup. Ct. 207 overruling Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867. In an action like that at bar the court determines what we may call the status of property. The principle involved would seem to be the same. We need not determine the query thus raised,

in view of what we said in connection with resident parties.

Counsel for the petitioner call our attention to the provisions of our statute relating to setting off a homestead, the statute providing merely for notice by publication. See the cases on that subject in 29 C.J. 1031, 40 C.J.S. 788, where the views of the different courts are shown. There is, however, aside from what might be said as to the practical aspect at least a theoretical difference. Probate proceedings are said to be proceedings in rem. 23 C.J. 1006, 33 C.J.S. 956, 957, Bardwell v. Collins, supra. A homestead, if the title is in the name of the deceased, is a part of his estate but is set aside as exempt through favor of the statute to the surviving spouse and minor children. There is, accordingly, at least some justification in the holding of some of the courts that a proceeding to set aside a homestead is a proceeding purely in rem, and that notice by publication alone is sufficient. But an estate by the entirety is created by deed. The property becomes the absolute property of the survivor upon the death of a spouse and is not a part of the estate of the latter. The proceeding or action to exclude other parties from any interest therein is not a part of the probate proceeding, but as held in King v. Pauly, supra, it is more in the nature of an action to quiet title. Legislatures and courts have not, as already seen, seen fit to dispense with personal notice to residents in such cases, and no necessity requires it.

The petitioner herein has an ample remedy under the Code of Civil Procedure under the provisions for a declaratory judgment and perhaps even under the provisions of Sec. 88-2502, Compiled Statutes, 1931, to have her rights in and to the property involved herein determined. The Legislature of this State has provided that in ordinary actions summons must be served upon

resident parties and a copy of a published notice must be sent to non-resident defendants when their address is known. Summons must be so served even in cases where heirs file a petition for distribution of an estate. Sec. 88-3702, Compiled Statutes, 1931. Provisions have been made that a judgment rendered without other service than by publication may be reopened within three years after the date of the judgment. Sec. 89-2302, Compiled Statutes, 1931. These and other provisions show that our Legislature has meant to comply with the standard of fairness and justness required by due process of law. We have no reason to think that it did not mean to be fair in connection with the statute in controversy. We do not think that it meant to provide in the statute in question for a conclusive judgment as to the property rights rendered only pursuant to notice by publication or posting, at least as to interested parties in this State whose residence is known.

We need not determine what the situation would be if notice complying with due process of law had been ordered and given, except to say that it would seem that the names of the parties interested, if known, ought to be set out in the petition and notice. See Title and Document Restoration Company v. Kerrigan, supra; Bear Lake County v. Budge, supra. We hold, merely, that under the notice given in this case the court had no power to adjudicate the rights of the respective parties interested in the property involved herein. It could only determine the fact of the death of Daniel Bergman. But that was not the object of the petition herein. Furthermore, the fact of death had presumably been already determined at the time of the appointment of the special administrator. It was also determined when the order for notice herein was made, nor is the fact of death in dispute. Hence, fur-

ther proceedings herein would be useless, and the judgment herein is, accordingly, affirmed.

*Affirmed.*

KIMBALL, C. J., AND RINER, J., *concur.*